UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMMETT MADISON GRAHAM, JR.,
     Petitioner,


          v.                              CIVIL ACTION NO.
                                          08-40208-MBB

CAROLYN A. SABOL, et al.,
     Respondents.

**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS THE AMENDED PETITION FOR WRIT OF HABEAS**
**CORPUS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 11);[1] MOTION FOR SUMMARY JUDGMENT (DOCKET**
**ENTRY # 41); STATUS MOTION OF ON-GOING EFFORTS SEEKING**
**MEDICAL TREATMENT AND LEAVE TO AMEND TO NAME ADDITIONAL**
**PARTIES UNDER RULE 15 OF THE FEDERAL RULES OF CIVIL**
**PROCEDURE (DOCKET ENTRY # 44); MOTION FOR A WRIT OF**
**INJUNCTIVE[sic] PURSUANT TO RULE 65(b) AND UNDER**
**28 U.S.C. § 2248 (DOCKET ENTRY # 46); MOTION FOR LEAVE TO**
**AMEND TO ADD MORE PARTIES UNDER RULE 15-C OF FED. R.**
**CIV. P. AND STATUS REPORT TO GIVE THE COURT A COMPLETE**
**PICTURE OF CRUEL AND UNUSUAL PUNISHMENT AND TO DISMISS,**
**TERMINATE TERM OF IMPRISONMENT UNDER 2241**
**(DOCKET ENTRY # 47)**

**August 11, 2010**

**BOWLER, U.S.M.J.**

    Pending before this court is a summary judgment motion filed

by respondent Carolyn A. Sabol ("Sabol") and a summary judgment

motion filed by Harley Lappin ("Lappin") and the United States

("United States") (collectively: "respondents").  (Docket Entry

## 11 & 41).  Sabol was the Warden of the Federal Medical Center

_____

    [1] On September 29, 2009, this court notified the parties it
would construe the motion to dismiss or, in the alternative, for
summary judgment (Docket Entry # 11) as a summary judgment motion
and gave the parties until October 30, 2009, to file additional
evidentiary material.  (Docket Entry # 40).

in Ayer, Massachusetts ("FMC Devens") at the time this action
commenced.  (Docket Entry # 6).  Lappin is the current Director
of the Federal Bureau of Prisons ("BOP").  (Docket Entry # 6).
Additionally pending are two motions for leave to amend (Docket
Entry ## 44 & 47) and a motion for writ of injunctive relief
(Docket Entry # 46), all filed by petitioner Emmett Madison
Graham, Jr. ("petitioner"), an inmate at FMC Devens.[2]

PROCEDURAL BACKGROUND AND MOTIONS TO AMEND

Petitioner originally filed the above styled petition for
habeas corpus on October 27, 2008, under 28 U.S.C. § 2241
("section 2241") alleging a number of constitutional violations.
(Docket Entry # 1).  Petitioner moved to amend the petition on
December 5, 2008, to add additional claims.  (Docket Entry # 6).
On September 29, 2009, this court allowed the motion to amend
thereby adding the following three claims:  (1) deliberate
indifference to medical needs in violation of the Eighth
Amendment; (2) improper denial of good time for disciplinary
infractions in violation of the Eighth Amendment; and (3) a loss
or miscalculation of good time credit by the BOP in violation of

---

[2] The pendency of a motion for writ of mandamus (Docket
Entry # 60) does not deprive this court of jurisdiction to decide
the above motions.  See Woodson v. Surgitek, Inc., 57 F.3d 1406,
1416 (5th Cir. 1995) (because mandamus "requests are only granted
in exceptional circumstances," absent stay of proceedings
"jurisdiction of the district court is not interrupted").

18 U.S.C. § 3624(b).   (Docket Entry # 40).

In a March 2009 motion to amend, petitioner sought to add the United States and Lappin as defendants.   (Docket Entry # 15). This court allowed the motion.   (Docket Entry # 40).

In a subsequent motion, however, petitioner sought to withdraw all claims except for the deliberate indifference claims regarding petitioner's 2003 heart attack and "being dropped" (henceforth:  being dropped claim).   (Docket Entry # 35). Petitioner alleges he "was dropped when being transported to the hospital to have his [pacemaker] battery replaced" and that he suffered a heart attack in 2003.[3]   (Docket Entry # 6).  This court allowed the motion (Docket Entry # 35) and clarified that, "The section 2241 petition, as amended, will therefore include only the foregoing heart attack and 'being dropped' deliberate indifference claim against Sabol, the United States of America and Lappin."   (Docket Entry # 40).  In the same Memorandum and

---

[3]   The being dropped claim occurred in 2003 and is set forth as follows in paragraph six of the amended petition:

> Petitioner was dropped when being transported to the hospital to have his [pacemaker] battery replacement while he was unconscious and the result was severe back injury and shoulder injury.  There, he developed disc bulges at L3- 4, L4-5, and extraordinary chronic back pain, he went on to develop degenerative joint disease (DJP):  his shoulder (LT) has become abnormal approximately 1.3 cm. above the ACJT which requires surgery that has not been performed to this filing for these extremely painful conditions he essentially received no medical treatment.

(Docket Entry # 6, ¶ 6).

3

Order, this court set a deadline of "November 27, 2009, to file any additional motion for leave to amend including any motion to amend to name an additional party."  (Docket Entry # 40).

Within that time frame, petitioner filed the two pending motions for leave to amend.  (Docket Entry ## 44 & 47). Petitioner neglects to attach proposed amended complaints thereby complicating the task of ferreting out the alleged Eighth Amendment violations.  See Novastar Financial Inc., Securities Litigation, 579 F.3d 878, 884 (8th Cir. 2009) ("in order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion").  Because of petitioner's pro se status, this court will treat the motions and the supporting memoranda (Docket Entry ## 44, 47, 48 & 54) as setting out the allegations petitioner seeks to include at the present time in this action.

On November 4, 2009, petitioner filed the first of the two amendment motions.  (Docket Entry # 44).  The first motion seeks leave to amend the petition to name as respondents the BOP, BOP "employees and doctors," Sandra Howard, M.D. ("Dr. Howard"), Medical Director of FMC Devens, and Jeff Grondolsky ("Grondolsky").  (Docket Entry # 44).  Respondents filed a partial opposition objecting to the addition of Dr. Howard but not objecting to the substitution of Grondolsky for Sabol. (Docket Entry # 45).  Without leave of court, petitioner filed a

4

reply brief.  (Docket Entry # 49).[4]

_____

[4]  Petitioner filed the reply brief to respondents'
opposition to the first motion for leave to amend without seeking
leave of court in violation of LR. 7.1.  (Docket Entry # 49).  It
is a reply brief because the text of the filing responds to
respondents' filing (Docket Entry # 45) "not to add Dr. S. Howard
. . . because adding her and others as a respondent is 'futile'"
(Docket Entry # 49) (emphasis in reply brief).

   At the end of the reply brief petitioner seeks leave to
amend to add "Dr. Barnett."  It is neither fair nor appropriate
to construe the motion for leave to amend (Docket Entry # 44) as
seeking leave to amend to include Dr. Barnett as a respondent.
The first motion asks only "[t]o add defendants as:  The Federal
Bureau of Prisons, Fed. BOP. employees, Doctors' and Sandra
Howard is the Clinical Director and 'lead [doctor], and J.
Grondolsky as custodian."  (Docket Entry # 44) (punctuation and
brackets in original).  The body of the motion refers to Dr.
Barnett without prefacing his name with "defendant" or
"respondent."

   Likewise, the supporting memorandum to the second motion for
leave to amend (Docket Entry # 48) refers to Dr. Howard as
"defendant" and Dr. R. Barnett as simply Dr. Barnett.  The
supporting memorandum also asks for leave to add "Dr. D. Still"
and proffers additional reasons to support the first motion to
amend seeking to add Grondolsky and Dr. Howard.  Respondents had
the opportunity to address the propriety of adding Dr. Still in
their opposition to the second motion to amend.  (Docket Entry #
51).  They did not, however, have adequate notice or an
opportunity to be heard, absent seeking and obtaining leave to
file a sur-reply, to petitioner's brevis request to add Dr.
Barnett.

   A pro se litigant remains subject to the rules of procedure.
See Kenda Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d 216,
225 n.7 (1st Cir. 2003) ("'[p]ro se status does not insulate a
party from complying with procedural and substantive law'").
Petitioner did not recently discover either Dr. Barnett's
identity or the facts underlying the alleged unconstitutionality
of his conduct.  In fact, petitioner named Dr. Barnett as a
defendant in a previous conditions of confinement suit in this
district but omitted to name him as a defendant or respondent in
the motions for leave to amend presumably because petitioner
seeks habeas review under section 2241 and/or wishes to avoid the
implications of claim preclusion.

   A reply brief is not an opportunity to raise new arguments
let alone a request to add a new party.  See CMM Cable Rep., Inc.
v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1526 (1st Cir.

As to Grondolsky, it is appropriate to substitute Grondolsky, the current warden of FMC Devens, for Sabol, who retired in July 2009.  See generally Rule 25(d), Fed. R. Civ. P. Notably, petitioner does not object thereby waiving any objection to retaining Sabol in an individual capacity.  See In re Pharmaceutical Industry Average Wholesale Price Litigation, 588 F.3d 24, 31, (1st Cir. 2009); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("district court is free to disregard arguments that are not adequately developed"). Sabol is therefore dismissed and Grondolsky added as a respondent.[5]

As to the BOP and BOP employees and doctors, respondents do not address the request.  As explained below, the BOP is not a

---

1996) (courts are "entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion"); McCoy v. MIT, 950 F.2d 13, 23 (1st Cir. 1991) ("the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim"); In re Boston Regional Medical Center, Inc., 328 F.Supp.2d 130, 143 (D.Mass. 2004) (same).  The noncompliance with LR. 7.1(b)(3) likewise warrants denying the request to add Dr. Barnett.

The same ruling and reasoning apply to petitioner's allegation of deliberate indifference due to a denial of exercise in a reply brief (Docket Entry # 54) to respondents' opposition (Docket Entry # 51) to the November 27, 2009 motion for leave to amend (Docket Entry # 47).  The filing (Docket Entry # 54) is undeniably a reply brief because it responds to a declaration respondents filed on December 14, 2009, to support their opposition.

[5]  Any future reference to "respondents" thus includes Grondolsky.

proper party in either a section 2241 or a <u>Bivens</u>[6] proceeding.
Petitioner does not identify the employees and doctors but it is
evident they are not petitioner's custodian and therefore, as
explained below, not proper parties in a section 2241 proceeding.
Rule 4(m), Fed. R. Civ. P., establishes the applicable time frame
requiring petitioner to identify and serve these individuals in a
<u>Bivens</u> action.

Addressing the proper party in a section 2241 proceeding,
"The federal habeas statute straightforwardly provides that the
proper respondent to a habeas petition is 'the person who has
custody over [the petitioner].' 28 U.S.C. § 2242." <u>Rumsfeld v.
Padilla</u>, 542 U.S. 426, 434-435 (2004) (also citing and quoting 28
U.S.C. § 2243). In a section 2241 proceeding challenging
"'present physical confinement, the default rule is that the
proper respondent is the warden of the facility where the
prisoner is being held.'" <u>Cameron v. U.S.</u>, 506 F.Supp.2d 92, 94
(D.P.R. 2007) (dismissing BOP as party in section 2241
proceedings and quoting <u>Rumsfeld v. Padilla</u>, 542 U.S. at 428).
As explained in a First Circuit decision:

> Congress has stipulated that a writ of habeas corpus granted
> by a district court "shall be directed to the person having
> custody of the person detained." 28 U.S.C. § 2243. This
> means, of course, that the court issuing the writ must have
> personal jurisdiction over the person who holds the
> petitioner in custody . . . The courts of appeals . . . held

---

[6] <u>Bivens v. Six Unknown Named Agents of the Federal Bureau
of Narcotics</u>, 403 U.S. 388 (1971).

> with echolalic regularity that a prisoner's proper custodian
> for purposes of habeas review is the warden of the facility
> where he is being held.

Vasquez v. Reno, 233 F.3d 688, 691 (1st Cir. 2000) (reviewing
section 2241 petition).

Neither the BOP nor the unidentified BOP employees and
doctors are proper parties in a section 2241 proceeding.  As
Warden of FMC Devens where petitioner is housed, Grondolsky is
the only proper party in a section 2241 proceeding.

The BOP, a federal agency, is also not a proper defendant in
a Bivens action.  It is well settled that, "The Bivens doctrine .
. . does not override bedrock principles of sovereign immunity so
as to permit suits against the United States, its agencies, or
federal officers sued in their official capacities."  McCloskey
v. Mueller, 446 F.3d 262, 271-272 (1st Cir. 2006) (citation
omitted); Molina-Acosta v. Martinez, 392 F.Supp.2d 210, 215
(D.P.R. 2005) ("federal prisoner may only bring a Bivens claim
against a Bureau of Prisons officer in his individual capacity,
but in the absence of a waiver, the doctrine of sovereign
immunity prevents the prisoner from bringing a Bivens claim
against . . . the Bureau of Prisons") (citing Correctional
Services Corporation v. Malesko, 534 U.S. 61 (2001)).  The motion
for leave to amend to add the BOP is futile or, stated otherwise,
fails to state a claim for relief as to a section 2241 and a
Bivens action.

8

Turning to the November 27, 2009 motion for leave to amend, it seeks to include an Eighth Amendment claim based on a bowel obstruction, back and shoulder pain and inadequate pain medications.[7]  (Docket Entry # 47).  The supporting memorandum and exhibits filed the same day clarify that petitioner also seeks to add "Dr. D. Still, Chief Dental Officer" ("Dr. Still")[8] as a respondent and allege that she refused to pull an abscessed tooth and provide dental fillings in November 2009 thereby causing petitioner severe pain.[9]  (Docket Entry # 48). Characterizing the circumstances as "conditions of his confinement," petitioner seeks to "dismiss the indictment and terminate his term of imprisonment."  (Docket Entry # 47).

In sum, other than the BOP which is subject to dismissal and Grondolsky who is substituted for Sabol, petitioner seeks leave to amend the amended petition to add Dr. Still, unidentified BOP employees and doctors, and Dr. Howard as respondents.  (Docket Entry ## 44, 47 & 48).  Respondents object to adding Dr. Still and Dr. Howard because the only proper respondent in a section 2241 proceeding is the warden or superintendent of the facility

---

[7]  The additionally referenced "Down Heart Syndrome" constitutes part of the 2003 heart attack, pacemaker and being dropped claims.

[8]  Exhibits in the summary judgment record identify this individual as Darcel Still, D.D.S., Chief Dental Officer at FMC Devens.

[9]  The supporting memorandum also addresses the first motion to amend to add Dr. Howard and Grondolsky.

9

housing petitioner, i.e., Grondolsky.  (Docket Entry ## 45 & 51).
As explained above, respondents are correct if this action
proceeds as a section 2241 petition as opposed to a <u>Bivens</u>
action.  <u>See</u> <u>Rumsfeld v. Padilla</u>, 542 U.S. at 434-435; <u>Vasquez v.
Reno</u>, 233 F.3d at 691.

As to the allegations lodged against these individuals,
this action at present involves the 2003 heart attack and the
being dropped deliberate indifference claims.  (Docket Entry #
40; Docket Entry # 6, ¶ 6).  The two pending motions to amend
seek to add alleged Eighth Amendment violations based on
inadequate dental care in 2008 and 2009 (Docket Entry # 48, p. 4
& Ex. B; Docket Entry # 44, Ex. B),[10] inadequate pain medication
for petitioner's back, shoulder and teeth (Docket Entry # 44, Ex.
A & A-1; Docket Entry # 47, ¶ 4),[11] improper treatment of his

---

[10]  Petitioner completed sick call forms for the tooth pain
in November 2009.  (Docket Entry # 44, Ex. B).  He also submitted
an inmate request form stating that Dr. Still "removed the wrong
tooth" on August 23, 2009.  (Docket Entry # 39, Ex. B).  On July
24, 2009, petitioner completed another inmate request form asking
for dental treatment to remove two teeth.  (Docket Entry # 32).
Previously, this court advised the parties it would consider
these exhibits attached to the foregoing status motions (Docket
Entry ## 32 & 39) as part of the summary judgment record.

[11]  With the exception of an October 2009 inmate request to
Dr. Howard for assistance with pain medications, these claims
predate the last filing petitioner made in opposition to the
summary judgment motion filed in <u>Graham v. United States</u>, Civil
Action No. 08-40113-RGS ("Massachusetts action").  That said,
respondents do not directly address the deliberate indifference
claim based on inadequate pain medications on summary judgment.

bowel obstruction, back and shoulder[12] (Docket Entry # 48, p. 7 &
Ex. A; Docket Entry # 47, ¶ 3), failing to send petitioner to a
cardiologist and have his pacemaker replaced and/or properly
monitored (Docket Entry # 48, pp. 2-3 & Ex. A-2; Docket Entry #
44, pp. 2-7),[13] and for condoning taking petitioner off morphine
medication and Dr. Barnett not refilling blood pressure
medications (Docket Entry # 44; Docket Entry # 48, p. 3).
Petitioner additionally alleges placement in administrative
segregation on or about August 5, 2009, in retaliation for
seeking administrative remedies and complaining about Dr. Barnett
(Docket Entry # 44, p. 9) and transfers on more than 16 occasions
to different institutions in retaliation for the exercise of his
First and Eighth amendment rights (Docket Entry # 44, p. 10 & Ex.
5).[14]

---

[12] The allegations involving inadequate treatment of
petitioner's back and shoulder are already encompassed in this
action because petitioner includes them in the being dropped
claim. (Docket Entry # 6, ¶ 6). The shoulder deliberate
indifference claim concerns the allegation that, "Petitioner was
dropped when being transported to the hospital to have his
battery replacement while he was unconscious and the result was
severe back injury and shoulder injury . . . his shoulder become
[sic] abnormal . . . which required surgery that has not been
performed." (Docket Entry # 6, ¶ 6). Respondents address the
bowel obstruction, back and shoulder claims as barred on summary
judgment by res judicata and/or collateral estoppel. (Docket
Entry # 11, pp. 7 & 19; Docket Entry # 42).

[13] The cardiologist and the pacemaker allegations include
alleged improper treatment in 2009. (Docket Entry # 48, Ex. A-
2).

[14] Exhibit five identifies the various transfers. In the
event petitioner does not wish to proceed on the above non-

11

Respondents contend that the proposed amendments are futile because:  (1) an Eighth Amendment deliberate indifference claim is actionable only as a _Bivens_ conditions of confinement claim; (2) the claims fail under principles of res judicata or collateral estoppel; (3) the deliberate indifference claim against Dr. Still fails on the merits because petitioner received extensive dental care; (4) the being dropped claim fails against Dr. Howard due to her lack of personal involvement in the alleged unconstitutional conduct; and (5) the heart attack and pacemaker deliberate indifference claim fails on the merits.[15]  (Docket Entry ## 45 & 51).

It is well settled that futility constitutes an adequate basis to deny amendment.[16]  See generally Maine State Building

---

medical claims for retaliation and institutional transfers, he should file a motion to withdraw.

[15]  It is not necessary to address the fifth argument because, as discussed infra, claim preclusion prevents relitigation of the claim.

[16]  Applications for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242; _accord_ Rule 11, Rules Governing Section 2254 Cases Foll. ("Federal Rules of Civil Procedure" apply in section 2254 proceeding "to the extent they are not inconsistent with any statutory provisions or these rules").  Thus, whether this action proceeds as a section 2241 petition or as a _Bivens_ action, Rule 15, Fed. R. Civ. P., and caselaw construing that rule apply.
As to the allegations in 2009, Rule 15(d), Fed. R. Civ. P. ("Rule 15(d)"), as opposed to Rule 15(a), sets out the requirements for supplementing a complaint to set "out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  Like Rule 15(a), futility constitutes a proper basis to deny leave to

and Construction Trades Council, AFL-CIO v. United States
Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  The proper
standard to gauge futility depends upon the posture of the
action.  See Hatch v. Department for Children, Youth and Their
Families, 274 F.3d 12, 19 (1st Cir. 2001).  At the time
petitioner filed the two motions to amend, there was a pending
summary judgment motion on the docket.  (Docket Entry ## 11 &
40).[17]  Petitioner filed a plethora of exhibits to support the
petition and subsequent filings thereby evidencing that a large
amount of discovery is not warranted.  Given the documentary
trail of the medical treatment petitioner received at FMC Devens,
there is little to suggest that undiscovered facts would place
the deliberate indifference claims in a different light.  See Id.
at 19 (stricter substantial evidence standard applies where
amendment sought after close of discovery and docketing of
summary judgment motion and noting that appellant did not suggest
discovery would reveal new facts to place case "in a different
light").  Accordingly, the appropriate standard to assess
futility is whether "the proposed amendments were supported by

---

supplement a complaint.  See Quaratino v. Tiffany & Co., 71 F.3d
58, 66 (2nd Cir. 1995) ("[a]bsent . . . futility, the motion
[under Rule 15(d)] should be freely granted"); Mueller Co. v.
U.S. Pipe & Foundry Co., 351 F.Supp.2d 1, 2 (D.N.H. 2005)
("denial of a proposed supplement on the basis of futility is . .
. proper").

[17]  This court advised the parties it would treat the motion
to dismiss as a summary judgment motion before petitioner filed
the motions to amend.

'substantial and convincing evidence.'"   <u>Resolution Trust Corp.</u>
<u>v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994); <u>accord</u> <u>Hatch v.</u>
<u>Department for Children, Youth and Their Families</u>, 274 F.3d at
19.

Turning to the first argument, petitioner insists that this
action is a section 2241 proceeding and "not a <u>Bivens</u> action."[18]
(Docket Entry # 43).   Petitioner maintains that "an Eight[h]
Amendment deliberate indifference claim is actionable through a
petition for habeas corpus" which "is not barred by res judicata
and/or collateral estoppel."[19]   (Docket Entry # 54).   As
previously indicated, petitioner seeks release from incarceration
as opposed to monetary damages and points out that "a habeas
petition is the appropriate means to challenge executive[sic]
duration of his incarceration.   While <u>Bivens</u> action is the

---

[18]   Petitioner correctly does not seek release under 28
U.S.C. § 2255.   "Section 2255 is the primary avenue for relief
for federal prisoners protesting the legality of their sentence,
while § 2241 is appropriate for claims challenging the execution
or manner in which the sentence is served." <u>United States v.</u>
<u>Peterman</u>, 249 F.3d 458, 461 (6th Cir. 2001); <u>accord</u> <u>Reyes-Requena</u>
<u>v. United States</u>, 243 F.3d 893, 900-901 (5th Cir. 2001); <u>United</u>
<u>States v. Barrett</u>, 178 F.3d 34, 50 n.10 (1st Cir. 1999).   Section
2241 petitions typically challenge "such matters as the
administration of parole, computation of a prisoner's sentence by
prison officials, prison disciplinary actions, prison transfers,
type of detention and prison conditions." <u>Jiminian v. Nash</u>, 245
F.3d 144, 146 (2nd Cir. 2001).

[19]   Citing and quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 479
(1991), petitioner points out that, "'At common law, res judicata
did not attach to a court's denial of habeas relief.'"   (Docket
Entry # 44).

appropriate means for money damages."   (Docket Entry # 44).

"As a general matter, a petition for habeas corpus is the appropriate means to challenge the 'fact or duration' of incarceration, while challenges to the conditions of confinement are generally brought as civil rights claims under Bivens." Sanchez v. Sabol, 539 F.Supp.2d 455, 459 (D.Mass. 2008); see Kane v. Winn, 319 F.Supp.2d 162, 213 (D.Mass. 2004); Kamara v. Farquharson, 2 F.Supp.2d 81, 89 (D.Mass. 1998) ("[i]t is a well-settled general principle that a habeas petition is the appropriate means to challenge the 'actual fact or duration' of one's confinement, whereas a civil rights claim is the proper means to challenge the 'conditions' of one's confinement").   In the event an inmate establishes that his "medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for appropriate treatment, or to award him damages; release from custody is not an option." Glaus v. Anderson, 408 F.3d 382, 387 (7th Cir. 2005).   Consequently, courts "usually find habeas relief unavailable" where, as here, "a claim involves inadequate medical treatment." Sanchez v. Sabol, 539 F.Supp.2d at 459; see Kane v. Winn, 319 F.Supp.2d at 215.

This case is no exception.   The fact that petitioner seeks injunctive relief in the form of being placed under the care of "Dr. Beam" rather than Dr. Barnett and to be placed on effective

pain medication (Docket Entry # 46) does not merit construing this action as a section 2241 petition.  See, e.g., Sanchez v. Sabol, 539 F.Supp.2d at 459 (construing section 2241 petition seeking primary relief of kidney transplant for federal inmate as Bivens action).[20]  Notwithstanding the section 2241 label, this action is in reality a Bivens proceeding.

The issue therefore devolves into whether to dismiss the petition, require petitioner to amend the petition or construe it as a Bivens action challenging the constitutionality of petitioner's medical care.  See Sanchez v. Sabol, 539 F.Supp.2d at 459.  Having ferreted out the remaining allegations, the appropriate course of proceeding is to construe the petition as a Bivens civil rights action.  Petitioner is also proceeding pro se, see Kane v. Winn, 319 F.Supp.2d at 215 (treating petition for habeas corpus as a civil rights claim where the petitioner was pro se), and "[t]he best view is to treat such a habeas petition as an instance of inartful pleading and to permit the pro se petitioner to proceed as though his action were properly pled." Sanchez v. Sabol, 539 F.Supp.2d at 459.

Respondents next maintain that principles of res judicata, also known as claim preclusion, make the proposed claims against

---

[20]  The Sanchez court also explained that it lacked the authority to issue a specific and direct order for a transplant. Sanchez v. Sabol, 539 F.Supp.2d at 459.  The court noted that, "The most it can do is to order BOP officials to review Sanchez's request for a transplant in an expedited manner."  Id.

Dr. Howard futile.[21]   Respondents focus their discussion on the

being dropped, the 2003 heart attack and the pacemaker claims as

barred by claim or issue preclusion.[22]   In particular, the

opposition to the motion for leave to amend with respect to Dr.

Howard limits the discussion to "the only remaining claims in

this case" which are the being dropped claim, "that [p]etitioner

has seen a cardiologist only once since allegedly having a heart

attack in 2003 and that his pacemaker has not been monitored

often enough." (Docket Entry # 45).   Thus, the opposition to the

amendments challenge the addition of Dr. Howard to the foregoing

and presently existing allegations as well as the pacemaker claim

rather than all of the proposed allegations identified previously

by this court.   As discussed infra, because claim preclusion bars

these presently existing claims against Grondolsky and Lappin,

the doctrine also bars the same claims against Dr. Howard, who

---

[21]   Respondents do not argue futility based on res judicata
or collateral estoppel with respect to the proposed dental claims
against Dr. Still.  (Docket Entry # 51).

[22]   Ordinarily, an amended complaint supersedes the original.
See Snyder v. Pascack Valley Hospital, 303 F.3d 271, 276 (3rd
Cir. 2002) ("amended complaint supersedes the original version in
providing the blueprint for the future course of the
litigation").  The original amended petition included the heart
attack and being dropped claims.  (Docket Entry # 6, ¶ 6; Docket
Entry # 40).  Petitioner, however, is proceeding pro se.  His
October 2009 opposition to the motion for summary judgment cites
and discusses at length the heart attack and being dropped
claims.  Because of petitioner's pro se status, this court
construes the motions to amend as seeking to add rather than
supercede the amended petition.  The heart attack and being
dropped claims therefore remain in this proceeding.

was a party in the Massachusetts action, a prior <u>Bivens</u> action adjudicated in this district.[23]

In the alternative, the being dropped claim against Dr. Howard is futile given her lack of personal involvement in the incident itself as well as any supervision of the incident. Personal involvement in the unconstitutional conduct is required to maintain a <u>Bivens</u> claim.  <u>See</u> <u>McCloskey v. Mueller</u>, 446 F.3d at 271; <u>see also</u> <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009).[24]

Turning to the final futility argument, respondents submit that the deliberate indifference claim against Dr. Still fails on the merits because petitioner received extensive dental care. Petitioner alleges that Dr. Still refused to pull an abscessed tooth and provide needed fillings which caused petitioner to lose weight due to the pain and his bad teeth.  Dr. Still also refused to send petitioner "to dental on the outside." (Docket Entry # 48, p. 4).

The exhibits attached to the supporting memorandum reveal that petitioner submitted inmate sick calls on November 1 and 9, 2009, complaining about the need to have a tooth pulled that was causing him severe pain and an inability to eat.  On November 12,

---

[23]  It is therefore not necessary to address respondents' futility argument that the heart attack and pacemaker deliberate indifference claims fail on the merits.

[24]  The foregoing principle mandating personal or supervisory involvement is explained in greater detail infra.

2009, petitioner completed a third inmate sick call request again complaining of the pain and asking to have the tooth pulled.

On November 19, 2009, Dr. Still examined petitioner at a dental clinic.  During the exam, petitioner complained about a hole in his tooth and pain including thermal sensitivity.  He reported the onset as more than one month before the November 19, 2009 examination with a duration of two to six months.  Upon examining the tooth, Dr. Still noted a "Defective/Lost Restoration."  (Docket Entry # 51, Ex. 1(A)).  After taking and examining a periapical radiograph, Dr. Still performed an amalgam restoration on the tooth.  She counseled petitioner on the plan of care and to follow up at sick call if needed.

While incarcerated at FMC Devens, petitioner also experienced aggressive periodontitis and bone loss in certain teeth.  (Docket Entry # 51, Ex. 1(A)).  He had a tooth extracted by B. Gelfand, D.D.S. ("Dr. Gelfand") on February 17, 2009. (Docket Entry # 51, Ex. 1(A)).  He underwent an amalgam restoration of another tooth by Dr. Gelfand on May 18, 2009. (Docket Entry # 51, Ex. 1(A)).  Petitioner had two teeth extracted by Dr. Still on August 21, 2009.  (Docket Entry # 51, Ex. 1(A)).  On October 8, 2009, petitioner had a composite restoration of a tooth and an extraction of an additional tooth by Dr. Still.  (Docket Entry # 51, Ex. 1(A)).

The Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994),

19

set forth a two part test for Eighth Amendment violations. "First, the deprivation alleged must be, objectively, sufficiently serious." Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer v. Brennan, 511 U.S. at 834). Second, there must be a showing "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Burrell v. Hampshire County, 307 F.3d at 8 (citing Farmer v. Brennan, 511 U.S. at 837).

Where an issue of deliberate indifference is presented, liability will not lie "unless the official knows of and disregards an excessive risk to inmate health and safety." Farmer v. Brennan, 511 U.S. at 837.  "A finding of deliberate indifference requires more than a showing of negligence." Id.; see Burrell v. Hampshire County, 307 F.3d at 8 (deliberate indifference standard requires state of mind "more blameworthy than negligence").  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. at 837.

Thus, substandard treatment, "'even to the point of malpractice, is not the issue'" under the deliberate indifference standard. Feeney v. Correctional Medical Services, Inc., 464 F.3d 158, 162 (1st Cir. 2006).  A disagreement about the

appropriate course of treatment "'may present a colorable claim
of negligence, but it falls short of alleging a constitutional
violation.'"   <u>Id.</u>

The care Dr. Still provided falls significantly short of
deliberate indifference.  The time between petitioner's November
1, 9 and 12, 2009 inmate sick calls complaining about the tooth
(Docket Entry # 48, Ex. B) and the November 19, 2009 examination
and restoration (Docket Entry # 51, Ex. 1(A)) is brief.  In the
previous two to six months, petitioner received extensive dental
care.  Far from being ignored or deliberately punished,
petitioner received adequate dental care in satisfaction of the
Eighth Amendment standard.  The amendment to add Dr. Still along
with a deliberate indifference dental claim is therefore futile.

With respect to the remaining allegations identified by this
court, petitioner is proceeding pro se and leave to amend is
ordinarily freely given.  Under Federal Rules of Civil Procedure,
Rule 15(a), Fed. R. Civ. P. ("Rule 15(a)"), leave to amend "shall
be freely given when justice so requires."  <u>Maine State Building
and Construction Trades Council, AFL-CIO v. United States
Department of Labor</u>, 359 F.3d at 19; <u>see</u> <u>Aponte-Torres v.
University of Puerto Rico</u>, 445 F.3d 50, 58 (1st Cir. 2006).  The
same standard applies to supplementing the amended petition to
include allegations arising after the filing of the amended

petition.[25]  This court therefore allows petitioner leave to amend and supplement the amended petition to include the aforementioned deliberate indifference claims and the retaliation claims.  Dr. Howard therefore remains in this action albeit only as to these remaining allegations.

The deadline for filing further amendments has passed.  As explained above, this action shall proceed only as a <u>Bivens</u> proceeding.

FACTUAL BACKGROUND AND SUMMARY JUDGMENT MOTIONS

On January 20, 2009, Sabol, now replaced by Grondolsky, filed the motion for summary judgment.[26]  (Docket Entry # 11).  On October 5, 2009, Lappin and the United States filed the second motion for summary judgment.  (Docket Entry # 41).

In the first summary judgment motion, Sabol challenges the deliberate indifference claims on the basis that she was not personally involved in the purportedly unconstitutional conduct. The substitution of Grondolsky and Sabol's dismissal moots this argument.[27]  This court previously addressed the argument Sabol

---

[25]  See footnote 16.

[26]  The motion raises a number of arguments based on claims that are no longer in this action.  (Docket Entry ## 11 & 12). Hence, this court does not address the arguments based on the inmate financial responsibility program, the disciplinary incidents in March and July of 2004 and December 2007 and the BOP's miscalculation of good conduct time.  The remaining arguments attack the deliberate indifference claim against Sabol.

[27]  Grondolsky may, of course, seek dismissal in the future based on his lack of personal involvement.  It is not appropriate

raises regarding the distinction between a <u>Bivens</u> action and a habeas petition.  The third argument that it "would not serve judicial economy to litigate the exact same issues in two . . . simultaneous lawsuits," to wit, this action and the Massachusetts action, no longer applies because the Massachusetts action is no longer a simultaneous ongoing lawsuit in the district court.[28]  Thus, the only remaining viable argument in the first summary judgment motion is the argument based on res judicata and/or collateral estoppel.[29]  In particular, Sabol maintains that claim and issue preclusion bar the deliberate indifference claim "with regard to petitioner's stay at FCI Gilmer from July 2003 until August 2005."  (Docket Entry ## 11 & 12).

In the second summary judgment motion, Lappin and the United States raise the previously addressed argument that this case should only proceed as a <u>Bivens</u> action.  Lappin additionally argues that he was never personally involved in the allegedly unconstitutional conduct and the United States raises a sovereign immunity argument.  (Docket Entry ## 41 & 42).

The standard of review for summary judgment is well established.  Summary judgment is appropriate when "the

_____

to decide the issue as it applies to Grondolsky at this time because petitioner has not had an opportunity to address the argument.

[28]   The action is presently on appeal.

[29]   This court refers to these doctrines respectively as claim and issue preclusion.

23

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Carroll v. Xerox Corporation, 294 F.3d 231, 236 (1st Cir. 2002) (quoting Rule 56(c)).  An issue is genuine where a fact finder could reasonably resolve the issue in favor of either party.  See Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  A material fact may "sway the outcome of the litigation under the applicable law."  Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006).  When analyzing a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party.  See Buchanan v. Maine, 469 F.3d 158, 165 (1st Cir. 2006).  "'[C]onclusory allegations, improbable inferences, and unsupported speculation'" will not survive a motion for summary judgment.  Cadle Co. v. Hayes, 116 F.3d at 960.

The factual background is not summarized at length because respondents limit the summary judgment challenge to the claim and issue preclusion argument, the lack of personal involvement on the part of Lappin and the sovereign immunity of the United States.

Turning to the factual background, petitioner has been in

the custody of the BOP since 1998.  (Docket Entry # 12, Ex. 1).
He resided in various locations and facilities over the years.
(Docket Entry # 12, Ex. 1).  From August 1999 to May 2002, he
resided at FCI Edgefield in South Carolina.  In December 2003,
petitioner resided at the Federal Correctional Institution in
Glenville, West Virginia ("FCI Gilmer") where he experienced a
heart attack and was dropped by BOP officers while being
transported on an ironing board.  (Docket Entry # 6).[30]  Prison
staff at FCI Gilmer dropped petitioner while attempting to bring
him to a hospital to replace the battery of his pacemaker.[31]
(Docket Entry # 6).  Petitioner obtained statements dated in
December 2003 and January 2004 from inmates regarding their

---

[30] Petitioner makes these statements under penalty of
perjury.  (Docket Entry ## 6 & 44).  "An unsworn statement under
penalty of perjury has the same effect as an affidavit."  In re
Martinez-Catala, 129 F.3d. 218 (1st Cir. 1997).  It is not
necessary to decide whether issue preclusion prevents accepting
petitioner's averment that he experienced a heart attack.  See
generally Bobby v. Bies, __ U.S.__, 129 S.Ct. 2145, 2152 (2009)
(issue preclusion prevents "successive litigation of an issue of
fact or law that is actually litigated and determined by a valid
and final judgment, and . . . is essential to the judgment").
The magistrate judge in a Bivens action in West Virginia, Graham
v. Ashcroft, Civil Action No. 05-00089, determined that
petitioner "became unconscious and was taken to the hospital in
Weston, West Virginia, where his pacemaker was replaced."
(Docket Entry # 16, West Virginia action).  Even assuming that
issue preclusion does not bar the above averment, claim
preclusion, as discussed infra, bars the 2003 heart attack
deliberate indifference claim.

[31] One percipient witness, inmate Anthony Moats, attests
that the officials used an ironing board due to a lack of
stretchers in the unit.  (Ex. A).  The group of exhibits
designated as Exhibit A is not separately docketed.

observations of the incident.   (Ex. A).

As a result of being dropped, petitioner believes he injured his back and shoulder.   (Docket Entry # 6).   In February 2004, petitioner received a CT scan of the cervical spine.   The radiologist reported degenerative changes as well as a disc bulge at C6-7 but found "NO SIGNIFICANT ABNORMALITY ON THE IMAGES OBTAINED."   (Ex. A).   In November 2006, petitioner underwent another examination of the cervical spine.   The radiology report found "moderate multilevel degenerative changes most pronounced at C5-6 and C6-7" with significant narrowing of the disc space. (Docket Entry # 43, Ex. 13).

On July 21, 2008, petitioner had a radiology examination of his left shoulder performed by a medical group at the University of Maryland.   The radiology report found abnormal calcification of approximately 1.3 centimeters which the radiologist considered an "old trauma/bursitis."   (Docket Entry # 43, Ex. 15).   Notes dated two days later on the report reflect that "plaintiff was dropped in 2003 by staff when battery died being taken out to hospital."   (Docket Entry # 43, Ex. 15).   Dr. Barnett reviewed the report on July 24, 2008.   (Docket Entry # 43, Ex. 15).

Petitioner also has a history of a small bowel obstruction. (Ex. A).   An April 2000 radiologic report describes "scattered gas" but "no evidence of significant bowel distension."   (Ex. A). The report did "not definitively exclude[]" a "small bowel

obstruction." (Ex. A). In 2008 petitioner underwent at least two radiology examinations of his abdomen. The report dated February 21, 2008, by the medical group at the University of Maryland describes an "[a]bnormal dilated small bowel loop." (Ex. A). Another report dated September 12, 2008, by the medical group found an "[a]bnormal partial bowel obstruction." (Ex. A).

According to petitioner, BOP staff also allowed his pacemaker batteries to die. (Docket Entry # 6). In April 1996, petitioner had a programmable pacemaker implanted in April 1996. (Ex. A). An August 2, 2002 letter reflects an expected life of the model of the pacemaker as 5.5 years.[32] Over the years, petitioner underwent several electrocardiograms including one on July 14, 2009. On July 23, 2009, in response to an inmate request to staff in which petitioner reported chest pain, an FMC Devens staff member directed petitioner to see "Devens inhouse cardiology." (Docket Entry # 44, Ex. "6 of 3"). On July 26, 2009, petitioner visited the FMC Devens clinic because of chest pain, cold sweats and chills. (Docket Entry # 44). Subsequently, he visited an outside hospital for a chemical stress test and a check for blocked arteries. (Docket Entry # 44). During this time period, petitioner had difficulty

---

[32] Although not relied upon by this court, the magistrate judge in the Massachusetts action found on the merits that petitioner's "pacemaker was replaced in 2003." (Docket Entry # 98, Massachusetts action).

27

obtaining prescription refills.  (Docket Entry # 44).  On August 2, 2009, petitioner had high blood pressure and received medication for this condition.  (Docket Entry # 44).

In relation to his medical care at FCI Gilmer, petitioner filed a <u>Bivens</u> action against the Warden at FCI Gilmer, the Hospital Administrator at FCI Gilmer, a cardiologist, the BOP, Lappin and other individuals in the United States District Court for the Northern District of West Virginia, <u>Graham v. Ashcroft</u>, Civil Action No. 05-00089 ("West Virginia action"), in December 2005.  Petitioner alleged that "prison staff dropped him from an ironing board (there was no stretcher in the unit)" thereby injuring his back.  (Docket Entry # 1, West Virginia action).  He complains that he received no treatment for the back condition until January 2004.  The complaint in the West Virginia action also alleges that petitioner needed a replacement pacemaker because "the battery was totally dead."  (Docket Entry # 1, West Virginia action).

In June 2006, a magistrate judge issued a report and recommendation that addressed and rejected inter alia the claim that petitioner was dropped from the ironing board on December 20, 2003, thereby injuring his back.  The magistrate judge noted that petitioner lost consciousness and was transported to the hospital where corrective measures took place.  Stating that petitioner experienced "no substantial or permanent harm as the

28

result of this incident," the magistrate judge found no deliberate indifference relative to petitioner's heart condition. (Docket Entry # 16, West Virginia action).

The magistrate judge also found no indication of the defendants' deliberate indifference to petitioner's back condition.  He described the back condition and the treatment petitioner received, including the February 2004 CT scan.  The magistrate judge also determined that a refusal to send petitioner to a neurosurgeon for his back and shoulder amounted to a disagreement regarding treatment as opposed to an Eighth Amendment violation.[33]  (Docket Entry # 16, West Virginia

---

[33] The relevant portion of the report and recommendation reads as follows:

> With respect to the plaintiff's back condition, the record contains the February 27, 2004 report of the Lumbar Spine CT the plaintiff underwent on February 23, 2004.  The report notes no abnormalities of L1-2 through L3-4. Although a mild disc bulge was evident at L4-5 and possibly L5-S1, there was no significant impingement.  Furthermore, there was no HNP or spinal stenosis.  The plaintiff's wheelchair was replaced with a cane on December 29, 2004, following a report of normal electromyogram and nerve conduction tests.  In addition, at least as of July 5, 2005, the plaintiff had a current prescription for Tylenol #3. Thus, the record before the Court gives no indication that the defendants have been deliberately indifferent to the plaintiff's back condition.  Furthermore, while the plaintiff may wish to see a neurosurgeon with regard to his back and shoulder complaints, there is nothing in the record to suggest that medical personnel who have examined the plaintiff believe such an appointment is necessary.  Mere disagreement with regard to treatment does not support a claim that the plaintiff's Eighth Amendments rights have been violated.  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

action).

In addition, the magistrate judge in the West Virginia action pointed out that evaluations of petitioner's pacemaker at regular intervals revealed it was operating normally until a December 17, 2003 appointment during which a technician determined the battery was at the end of its life.  The December 20, 2003 incident followed.  In May 2007, the district judge adopted the report and recommendation and entered a final judgment.  (Docket Entry # 35, West Virginia action).

After leaving FCI Gilmer in 2005, petitioner resided at federal facilities in North Carolina and Indiana before arriving at FMC Devens in August 2007.[34]  In 2008, petitioner filed the Massachusetts action.  The amended complaint in the Massachusetts action raised a number of deliberate indifference Bivens claims against various individuals at FMC Devens (including Sabol, Dr. Howard and Dr. Barnett), the BOP and the United States.

In the Massachusetts action, the magistrate judge issued a report and recommendation in August 2009.  (Docket Entry # 96, Massachusetts action).  On August 20, 2009, the district judge adopted the report and recommendation and entered a final

_____

(Docket Entry # 16, West Virginia action).

[34] Respondents also note that in 2007 petitioner filed another Bivens action against Lappin and others in the Eastern District of North Carolina, Graham v. Stansberry, Civil Action No. 07-03015, which remained pending in October 2009.

30

judgment.

On the merits, the magistrate judge rejected the deliberate indifference claim "that Barnett and Mercandante failed to evaluate his pacemaker or replace its battery with sufficient frequency." (Docket Entry # 12, ¶¶ 32-33, 41 & 56, Massachusetts action; Docket Entry # 98, Massachusetts action).  He determined that petitioner's pacemaker "has been evaluated fifteen times since it was placed." (Docket Entry # 98, Massachusetts action). The magistrate judge also addressed and rejected petitioner's claim that he was denied access to a cardiologist while at FMC Devens.  With respect to these deliberate indifference claims, the magistrate judge decided as follows:

> Graham indicates that the pacemaker battery is checked every three-to-four months.  Docket # 88 at 8.  That is, less than one physician recommends--but more than another believes is necessary.  Docket # 75 at ¶ 9.  Graham desires monthly checks.  Docket # 88 at 11.  The medical attention applied to Graham's pacemaker is not so clearly inadequate as to amount to a refusal to provide essential care, but rather is a dispute about the proper level of treatment, which is not a basis for liability under the Eighth Amendment.

> Similarly, Graham alleges that he was denied access to a cardiologist beginning in March, 2008.  The record, however, indicates that he has been followed in FMC Devens' Cardiac Clinic by its medical staff and monitored by a contract cardiologist.  See, e.g., Docket # 75, at ¶ 14; Id., Ex. A at 699-701 (a March 26, 2008, cardiology clinic visit); Id, [sic] at 25-27 (an October 2, 2008, cardiac clinic visit).  His allegation again refers to the frequency and level of his care, rather than a refusal to provide care, or the provision of clearly inadequate care.

(Docket Entry # 98, Massachusetts action).

The amended complaint in the Massachusetts action also raised deliberate indifference claims based on a denial of a back brace and a refusal to perform needed shoulder surgery.[35]   In the report and recommendation, the magistrate judge summarized 12 categories of deliberate indifference claims.   The ninth and tenth categories of deliberate indifference claims were "(9) that he was improperly denied a back brace (Id. at ¶ 47); [and] (10) that Dr. Howard refused him necessary shoulder surgery (Id. at ¶ 48)."   (Docket Entry # 98, Massachusetts action).   In the discussion section of the report and recommendation, the magistrate judge rejected the claims on the merits as a disagreement about the course of treatment rather than a constitutional violation.   The relevant portion of the decision reads:

> Likewise, Graham's allegations concerning a bowel obstruction do not concern a denial of care, but rather a disagreement as to the proper course of treatment . . . The same is true for Graham's allegations concerning his blephartis, his pain medication, the back brace, and his request for shoulder surgery.   See Id. at ¶¶ 52-82; 84; 67-71.

(Docket Entry # 98, Massachusetts action).

The amended complaint in the Massachusetts action additionally set out a deliberate indifference cause of action

---

[35]   In the case at bar, petitioner raises the similar deliberate indifference claim that he suffered a shoulder injury from being dropped while being transported to the hospital.   His left shoulder became abnormal "which requires surgery that has not been done."   (Docket Entry # 6, ¶ 6).

based on the absence of "treatment for a bowel obstruction that has been going on for years," and causing severe pain. (Docket Entry # 12, Massachusetts action). As indicated above, the magistrate judge rejected the claim on the merits.

## DISCUSSION

In seeking summary judgment, as noted above, respondents submit that Lappin was not personally involved and that the United States is entitled to sovereign immunity. They also assert claim and issue preclusion arguments. (Docket Entry ## 11 & 41).

Addressing the arguments seriatim, it is well established that, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1948 (2009) (noting that the respondent "correctly concedes" this principle); see Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) ("the plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of Bivens liability"). Supervisory liability is warranted where a supervisor is "a primary violator or direct participant in the rights-violating incident" or where "a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a

civil rights deprivation." Sanchez v. Pereira-Castillo, 590 F.3d at 49.  Overall, there must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. "[P]roof of mere negligence, without more, is inadequate to ground supervisory liability." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 583 (1st Cir. 1994).

In the amended petition, signed under penalties of perjury, petitioner states that he sent "letters to Harley Lappin" about the pacemaker batteries being allowed to die.[36]  (Docket Entry # 6, ¶ 5).  Such letters allow the jury to draw an inference of personal involvement. See Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 13 (1st Cir. 2007).[37]  Summary judgment on the

---

[36]  Although not considered evidence by this court, petitioner argues in a brief that "he made Defendant Lappin aware of his need to have the battery to his pacemaker replaced but he did nothing" by letter dated November 24, 2003.  (Docket Entry # 48, p. 2).

[37]  As explained more fully by the First Circuit in Rodriguez-Garcia in addressing supervisory liability of a mayor in the context of an action brought under 42 U.S.C. § 1983:

> We appreciate the reluctance to permit a jury to draw an inference about the personal involvement of the mayor on the basis of a letter sent to a department head.  However, if the court had correctly admitted the Letters as evidence of the mayor's knowledge of Rodriguez-Garcia's complaint and his personal involvement in dealing with it, the court could no longer maintain that Rodriguez-Garcia was attempting to establish the mayor's liability based simply on his role as the supervisor of a department head.  Instead, she would have had a basis for arguing that the mayor knew about and was directly involved in the disposition of her transfer and

basis of Lappin's lack of personal involvement is therefore inappropriate.

Turning to the next argument, the availability of a <u>Bivens</u> claim "does not overcome bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities." <u>McCloskey v. Mueller</u>, 446 F.3d at 272.  Simply put, "A <u>Bivens</u> claim does not lie against the United States." <u>Chiang v. Skeirik</u>, 582 F.3d 238, 243 (1st Cir. 2009) (citing <u>McCloskey v. Mueller</u>, 446 F.3d at 271-272).  The United States is therefore subject to dismissal on summary judgment.

Respondents next submit that claim preclusion bars the 2003 heart attack, including the pacemaker, and the being dropped deliberate indifference claims.[38]  (Docket Entry ## 41 & 42).  As to the deliberate indifference claims during petitioner's stay at FCI Gilmer from July 2003 to August 2005, Sabol maintains that claim preclusion precludes relitigation of the heart, including the pacemaker, and the back, shoulder and bowel obstruction

---

the failure to remedy it.  Although appellees argue strenuously that there was no evidence that the mayor personally received the Letters sent to him, this is a factual question appropriate for jury determination.

<u>Rodriquez-Garcia v. Municipality of Caguas</u>, 495 F.3d at 13.

[38]  With a few exceptions, this court declines to reach the issue preclusion argument because claim preclusion bars the relevant claim.

deliberate indifference claims.[39]   (Docket Entry ## 11 & 12, pp. 6 & 17).

Claim preclusion provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citations omitted).  The doctrine "applies if (1) the earlier suit resulted in a final judgment on the merits,[40] (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." Airframe Systems, Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010); accord In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (applying federal law and setting out same three elements).

Furthermore, "'Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or

---

[39] The argument therefore does not raise or challenge the claim or issue preclusion effect of the inadequate dental care, the inadequate pain medication and the cessation of morphine medication and non-renewal of blood pressure medications deliberate indifference claims.  The argument also fails to raise or address the retaliation claims for the August 2009 placement in administrative segregation and the transfers to different institutions.  This opinion does not prevent respondents from raising such an argument in any future, timely dipositive motion.

[40] The courts entered final judgments in both the West Virginia and the Massachusetts actions.

*could* have been raised in that action.'" Breneman v. U.S. ex
rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004) (emphasis added).
Consequently, once established, claim preclusion prevents
relitigation of not only the claims actually litigated, such as
those expressly or impliedly addressed by the magistrate judge in
the Massachusetts action, but also the claims that petitioner
could have raised in the Massachusetts action.

A later cause of action can also be sufficiently identical
to an earlier cause of action involving the same conduct even if
the conduct continues after the decision in the first action.
See Havercombe v. Department of Education of the Commonwealth of
Puerto Rico, 250 F.3d 1, 3 (1st Cir. 2001). Conversely, a
"special incident different from what already occurred in the
past" in the prior action may serve to differentiate the two
causes of action such that claim preclusion does not apply. Id.

Turning to the West Virginia action and as previously
indicated the magistrate judge addressed and rejected on the
merits a being dropped deliberate indifference claim. As set out
in the June 2006 report and recommendation, after being dropped
from the ironing board being used as a stretcher, petitioner
"lost consciousness and was transported to the hospital where
corrective measures were taken, and there is no indication that
he suffered any substantial or permanent harm as a result of the
incident." (Docket Entry # 16, West Virginia action). The being

37

dropped claim in the West Virginia action centered around the December 20, 2003 incident.  Petitioner alleged that FCI Gilmore staff dropped him from the ironing board while transporting him to the hospital thereby injuring his back.  (Docket Entry # 1, West Virginia action).  This cause of action is sufficiently similar and, indeed, virtually identical to the being dropped deliberate indifference claim in this action.

The Warden and the Hospital Administrator at FCI Gilmer, both defendants in the West Virginia action, hold the same or similar positions as Grondolsky and Dr. Howard in this action. See, e.g., Guzzi v. Clarke, 629 F.Supp.2d 161, 162 (D.Mass. 2009) (sufficient identity between Commissioner of Corrections and Superintendent of a prison and their successors in later suit to find parties were closely related for purposes of claim preclusion).  Claim preclusion therefore bars relitigation of the being dropped deliberate indifference cause of action in this proceeding.

The magistrate judge in the West Virginia action also addressed and rejected on the merits the 2003 heart attack and the pacemaker deliberate indifferent causes of action.  In the West Virginia action, as previously indicated, petitioner alleged he was denied access to a cardiologist when he arrived at FCI Gilmer in July 2003 and that his pacemaker battery was not replaced or checked on a regular basis.  (Docket Entry # 1, West

38

Virginia action).  The magistrate judge rejected the pacemaker
and the 2003 heart attack claims finding that petitioner's
pacemaker was regularly checked and that, after being dropped
from the ironing board being used as a stretcher, petitioner
"lost consciousness and was transported to the hospital where
corrective measures were taken, and there is no indication that
he suffered any substantial or permanent harm as a result of the
incident."[41]  (Docket Entry # 16, West Virginia action).  Insofar
as the pacemaker and 2003 heart attack deliberate indifference
causes of action in this action, including seeing "Dr.
Mercandante" only once and not having his pacemaker checked more
frequently or replaced after five years, the claims are
sufficiently similar to those in the case at bar.  Like the being
dropped claim, the parties in the West Virginia action are
closely related to the parties in this action as to the 2003
heart attack and pacemaker deliberate indifference claims.  See,
e.g., Guzzi v. Clarke, 629 F.Supp.2d at 162.

     In the alternative as to the pacemaker claim, the magistrate

_____

     [41]  The complaint in the West Virginia action did not use the
term heart attack.  It did, however, describe that on December
20, 2003, petitioner "became unconscious" and suffered chest
pains on the day he was dropped from the ironing board.  (Docket
Entry # 1 & Ex. H, West Virginia action).
     Because the West Virginia action bars relitigation of the
being dropped and 2003 heart attack claims, petitioner's argument
that the magistrate judge in the Massachusetts action "did not
provide a separate analysis on the 2003[] heart attack, being
dropped by staff" claims, does not avoid the claim preclusion
bar.

judge in the Massachusetts action also addressed and rejected a
pacemaker claim against Sabol, Dr. Barnett, Dr. Howard and others
that is sufficiently similar to the pacemaker claim in the case
at bar.  The fact that the pacemaker claim spans an additional
year does not prevent the doctrine's application.  See, e.g.,
Havercombe v. Department of Education of the Commonwealth of
Puerto Rico, 250 F.3d at 3 (recognizing that the allegedly same
employment discrimination "conduct went on for two more years"
than in the earlier action but finding the earlier and later
causes of action had the necessary identity to satisfy the second
element of claim preclusion).  The parties in this action as to
this claim are also identical (Dr. Howard) or closely related to
the parties in this action as to the pacemaker deliberate
indifference claim.  See, e.g., Guzzi v. Clarke, 629 F.Supp.2d at
162.

The pacemaker deliberate indifference claim also fails on
the merits.  There is an absence of evidence to raise a
reasonable inference to support the subjective component of a
deliberate indifference claim.  FMC Devens provided
electrocardiograms and there is insufficient evidence to support
that respondents were deliberately indifferent to the need to
replace the batteries in petitioner's pacemaker.

The magistrate judge in the West Virginia action also
addressed and rejected on the merits a deliberate indifference

cause of action vis-à-vis petitioner's back condition.  In the complaint, petitioner set out a deliberate indifference cause of action based on the lack of medical treatment for his back injury that resulted from the fall from the ironing board.[42]  The magistrate judge rejected the claim on the merits.  The magistrate judge in the Massachusetts action similarly rejected on the merits the deliberate indifference claim grounded upon the denial of a back brace.

The Warden and the Hospital Administrator at FCI Gilmer hold the same or similar positions as Grondolsky and Dr. Howard in this action.  Likewise, Sabol, a defendant in the Massachusetts action, is closely related to Grondolsky.  See, e.g., Guzzi v. Clarke, 629 F.Supp.2d at 162.  Petitioner sued Dr. Howard in both the Massachusetts and the present actions.  The third element of claim preclusion with respect to the West Virginia and the Massachusetts actions is therefore satisfied with respect to the deliberate indifference claim based on the improper treatment of petitioner's back.  In short, claim preclusion bars relitigation of the sufficiently similar deliberate indifference claim in this action and those in the West Virginia and the Massachusetts actions grounded upon the improper treatment of petitioner's back.

---

[42]  More specifically, petitioner complained about not seeing defendant Doris Williams, Medical Director at FCI Gilmer, until January 2004.  (Docket Entry # 1, West Virginia action).

In the Massachusetts action, the magistrate judge rejected the deliberate indifference claim regarding the refusal to perform shoulder surgery.  The shoulder deliberate indifference claim in the Massachusetts action and in this action both originate from petitioner being dropped in December 2003 on his way to the hospital.  The parties are either identical or closely related in each action.  Claim preclusion therefore applies.

As to the bowel obstruction deliberate indifference claim, the magistrate judge in the Massachusetts action rejected a sufficiently similar claim based on a failure to adequately treat petitioner's bowel obstruction at FMC Devens stating that:

> Likewise, Graham's allegations concerning a bowel obstruction do not concern a denial of care, but rather a disagreement as to the proper course of treatment.  Graham has complained of abdominal pain on numerous occasions, was examined both by FMC Devens medical staff and on several occasions at outside hospitals, and he received treatment and diagnostic imaging.  Id. at ¶¶ 33-37.  Physicians concluded that he had a small bowel obstruction and that surgery posed risks to him.  Id. at ¶ 38.

(Docket Entry # 98, Massachusetts action).  As previously intimated, the parties are identical or closely related with respect to this deliberate indifference claim.  Claim preclusion therefore prevents petitioner from relitigating the sufficiently identical cause of action based on the improper treatment at the same facility, FMC Devens, in this proceeding.[43]  The additional

---

[43]  Alternatively, FMC Devens staff were not deliberately indifferent.

year between the rejection of the claim in the Massachusetts
action and the present does not salvage or resuscitate the claim.
See, e.g., Havercombe v. Department of Education of the
Commonwealth of Puerto Rico, 250 F.3d at 3; Guzzi v. Clarke, 629
F.Supp.2d at 162.

The deliberate indifference cause of action based upon the
failure to send petitioner to a cardiologist is likewise subject
to summary judgment based on claim preclusion.  The magistrate
judge in the Massachusetts action rejected on the merits
petitioner's deliberate indifference cause of action claim that
he was denied access to a cardiologist while at FMC Devens.
Claim preclusion prevents petitioner from raising the virtually
identical claim in this proceeding against the same party, Dr.
Howard, and the closely related parties, Sabol in the
Massachusetts action and now Grondolsky in this action.

In sum, the deliberate indifference causes of action based
on being dropped in 2003, the 2003 heart attack, the monitoring
of his pacemaker and failure to replace its batteries, the
improper treatment of petitioner's bowel obstruction, back and
shoulder as well as the failure to send petitioner to a
cardiologist and have his pacemaker replaced are subject to
summary judgment based on claim preclusion.[44]  The following

--------

[44] Certain claims are also in the alternative subject to
summary judgment on the merits.

<u>Bivens</u> claims remain in this action:  (1) deliberate indifference claims for the inadequate pain medication for petitioner's back, shoulder and teeth (Docket Entry # 44, Ex. A & A-1; Docket Entry # 47, ¶ 4) and for condoning taking petitioner off morphine medication and not refilling blood pressure medication (Docket Entry # 44; Docket Entry # 48, p. 3); and (2) retaliation claims for placement in administrative segregation on or about August 5, 2009, in retaliation for seeking administrative remedies and complaining about Dr. Barnett (Docket Entry # 44, p. 9) and for transfers on more than 16 occasions to different institutions in retaliation for the exercise of his First and Eighth amendment rights (Docket Entry # 44, p. 10 & Ex. 5).

### MOTION FOR WRIT OF INJUNCTION

Petitioner seeks two forms of injunctive relief.  First, he requests that Dr. Beam replace Dr. Barnett as his doctor at FMC Devens because the latter is incompetent and an alcoholic. Second, petitioner requests that he "be put back on pain medication that works-not morphine."  (Docket Entry # 46) (emphasis in original).

Petitioner submits that he was under the care of Dr. Barnett "for almost two years" and filed numerous complaints against him. Petitioner further points out that Dr. Barnett was not at FMC Devens "for a few months" due to his "alcohol rehabilitation." During this absence, petitioner alleges that Dr. Beam

successfully controlled his blood pressure and pain medication.
When Dr. Barnett returned, however, petitioner was again placed
under his care.  Dr. Barnett proceeded to take petitioner off his
pain medication, morphine, "all at once" and has done "nothing
for his chronic back and shoulder pain."  Dr. Barnett also
refused to refer petitioner to a cardiologist and denied
petitioner shoulder surgery.  (Docket Entry # 46).

Petitioner additionally alleges that when "he was out of his
medication, it took him almost 3 weeks for Dr. Barnett to order
it for him."  (Docket Entry # 46).  He also contends in a
conclusory fashion, see, e.g., Cole v. Maine Dept. of
Corrections, 2008 WL 552768, *4 (D.Me. Feb. 27, 2008)
(restricting analysis of preliminary injunction motion to non-
conclusory argument), that retaliation is the custom and practice
at FMC Devens.  (Docket Entry # 46).

Petitioner does not identify the date at which point these
events took place.  The exhibit petitioner filed to support the
motion consists of a September 15, 2009 response to a request for
an administrative remedy by petitioner.  In the response,
Grondolsky states that, "A review of your medical records
indicates your medications were not refilled."  (Docket Entry #
46).

## DISCUSSION

In seeking injunctive relief, petitioner cites "Rule 65(b),"

45

Fed. R. Civ. P. ("Rule 65"), and 28 U.S.C. § 2248 ("section 2248").  Section 2248 is no longer applicable because this action is no longer proceeding as a habeas petition.

Rule 65(b) pertains to seeking and obtaining a temporary restraining order.  Petitioner, however, served respondents with the motion for injunctive relief.  He also seeks a long term remedy, to wit, being placed under the care of a different doctor.  Absent a court finding good cause, a temporary restraining order expires no later than 14 days after entry.  See Rule 65(b)(2), Fed. R. Civ. P.  Petitioner is proceeding pro se, however, and the motion is properly classified as a motion for a preliminary injunction.  See generally San Francisco Real Estate Investors v. Real Estate Investment Trust of America, 692 F.2d 814, 816 (1st Cir. 1982) (construing district court order as preliminary injunction as opposed to temporary restraining order given notice and the duration of the court's order as beyond the then ten day limit).  Even considering the motion as a motion for a temporary restraining order, however, petitioner is not entitled to relief because the balancing of the relevant factors detailed below does not support an injunction.[45]

---

[45]  "To determine whether to issue a temporary restraining order, the Court applies the same four-factor analysis used to evaluate a motion for preliminary injunction."  OfficeMax Inc. v. County Qwick Print, Inc., 2010 WL 1781009, *3 (D.Me. May 4, 2010).

In assessing a motion for a preliminary injunction, "a district court weighs four factors:  (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  Jean v. Massachusetts State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Respondents oppose injunctive relief because the deliberate indifference claims regarding the failure to send petitioner to a cardiologist, the inadequate control or denial of pain medication, the abrupt cessation of morphine and the denial of the request for shoulder surgery all fail on the merits.  Respondents also argue that claim or issue preclusion bars the underlying claims.

For the reasons already discussed, the only remaining underlying deliberate indifference claims in this Bivens action are the inadequate pain medication for petitioner's back, shoulder and teeth (Docket Entry # 44, Ex. A & A-1; Docket Entry # 47, ¶ 4)[46] and for condoning taking petitioner off morphine medication and not refilling medications in July and August 2009

---

[46] Petitioner submitted inmate requests to staff in August and October 2009 that evidence his receipt of Advil and Tylenol to control his pain.  (Docket Entry # 44, Ex. A & 4 of 3).

(Docket Entry # 44; Docket Entry # 48, p. 3).[47]  Although these claims are not presently the subject of summary judgment, petitioner fails to make a strong showing of a reasonable likelihood of success.

As to the pain medication claim, respondents argue that claim preclusion bars the cause of action.  The argument is well taken to the extent it demonstrates the lack of a reasonable likelihood of success.[48]  The magistrate judge in the Massachusetts action addressed and rejected on the merits a sufficiently similar deliberate indifference claim.  In the Massachusetts action, petitioner alleged a denial of adequate pain medication for his back, shoulder, foot spurs and arthritis. (Docket Entry # 12, ¶ 12, Massachusetts action).  In the August 2009 report and recommendation, the magistrate judge set out the allegation as the sixth of 12 categories of deliberate indifference allegations.  (Docket Entry # 98, p. 4, Massachusetts action).  The magistrate judge rejected the allegation on the merits because it did "not concern a denial of

---

[47]  Alternatively, to state the obvious and for reasons already discussed, the other deliberate indifference claims lack any showing of a reasonable likelihood of success.

[48]  This court's findings are limited to a reasonable likelihood of success because it is not appropriate to dismiss a claim on summary judgment based on an argument raised in opposing a motion for injunctive relief.  Respondents have ample time to present a second summary judgment motion addressing claim preclusion and the merits on these remaining deliberate indifference claims.

care, but rather a disagreement as to the proper course of treatment."[49]   The district court adopted the report and recommendation and entered a final judgment that is currently on appeal.

In this action, petitioner adds to the denial of pain medication claim the more recent complaints regarding inadequate pain medication to alleviate the pain in his teeth.  (Docket Entry # 44, p. 8).  The record evidences that the tooth pain occurred in July through November 2009 until alleviated by the November 19, 2009 extraction.[50]

The parties in the Massachusetts action and this action are identical (Dr. Howard) or sufficiently similar (Sabol in the Massachusetts action and Grondolsky in this action).  See, e.g., Guzzi v. Clarke, 629 F.Supp.2d at 162.  The additional time span

---

[49]   For convenience, the relevant portion of the opinion, quoted previously in the summary judgment section, reads as follows:

> Likewise, Graham's allegations concerning a bowel obstruction do not concern a denial of care, but rather a disagreement as to the proper course of treatment . . . The same is true for Graham's allegations concerning his blephartis, his pain medication, the back brace, and his request for shoulder surgery.  See Id. at ¶¶ 52-82; 84; 67-71.

(Docket Entry # 98, Massachusetts action).

[50]   Exhibits in the record fail to show that the tooth pain continued to a significant degree after the November 19, 2009 extraction.  Petitioner's most recent filing complains about abdominal pain and a bowel obstruction.  (Docket Entry # 62).

between the Massachusetts action and this action with "no special incident different" from the events in the past relative to denials of pain medication does not avoid claim preclusion.  See, Havercombe v. Department of Education of the Commonwealth of Puerto Rico, 250 F.3d at 3 (applying claim preclusion notwithstanding passage of time and noting that "nothing in particular-no special incident different from what had already occurred in the past-is identified as having taken place after 1997").  Accordingly, in light of the relatively strong foundation for claim preclusion barring the inadequate pain medication claim as well as a weak showing to support the merits of a deliberate indifference claim regarding the tooth pain, there is a very weak showing on the reasonable likelihood of success on this claim.[51]

There is also a weak showing on the merits of the deliberate indifference claim regarding the non-renewal of prescription medication.[52]  It is true that Grondolsky noted in response to a request for an administrative remedy that, "A review of your medical records indicates your medications were not refilled." Grondolsky pointed out, however, that petitioner failed to first ask a staff member for an appointment at the outpatient clinic

---

[51]  The same showing results whether viewing these claims individually as separate deliberate indifference claims or collectively as a single deliberate indifference claim.

[52]  See the previous footnote.

which is the ordinary system in a non-emergency situation such as
the one at issue involving petitioner.

Petitioner's more recent filing reveals administrative
exhaustion of the claim but also shows that petitioner received
refills of medication when requested.[53]  In particular,
petitioner complained about a nonrenewal of blood pressure, heart
and morphine medication when he went to the clinic at FMC Devens
on July 2, 2009.  Harrel Watts ("Watts"), Administrator of
National Inmate Appeals, investigated the matter and determined
that, "Further review reveals you have received refills on your
medications when you requested."  In reference to petitioner's
complaint that he did not receive refills on August 26, 2009,
Watts similarly noted that petitioner's medical records "reveal
you have received prescription refills each time you have
presented yourself to the Health Services Unit."  (Docket Entry #
62, Ex. B & B-1).

Turning to the remaining factors, irreparable harm may exist
"if the plaintiff shows that [his] legal remedies are
inadequate."  Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102
F.3d 12, 18 (1st Cir. 1996); see also Wolff v. NH Dept. of
Corrections, 2007 WL 3232531, *1 (D.N.H. Oct. 30, 2007)
(irreparable harm arises "when some harm from the challenged

---

[53]  It also reflects that on December 9, 2009, petitioner was
experiencing abdominal pain and being treated for the condition.
(Docket Entry # 62, Ex. A & A-1).

conduct could not be adequately redressed with traditional legal or equitable remedies following a trial").   The record indicates that petitioner is receiving prescription refills and his medical condition is being addressed.[54]   There is also little potential for irreparable harm because it is unlikely that the inadequate control of pain medication and the alleged nonrenewals of medication are continuing at present and will continue in the future.   Notably, petitioner recently changed his address from FMC Devens to Whiteville, North Carolina.   (Docket Entry # 63).

The balance of the interests of the parties does not favor petitioner.   Furthermore, it appears that petitioner is receiving constitutionally adequate care such that the public interest in providing constitutionally adequate care in accordance with the Eighth Amendment is being served.   Moreover, the public interest

---

[54] The Wolff court declined to find irreparable harm on a similar claim inasmuch as Wolff, an inmate, was receiving sufficient medical care.   The reasoning is equally applicable to the case at bar:

> Wolff's claim that he is not being provided with adequate pain medication fares no better.   The prison demonstrated that Wolff is being provided with a substantial amount of medical care, and that all of his medical concerns, including gastrointestinal ailments and pain, are currently being actively treated by prison medical staff.   As is the case with the prepackaged meals, Wolff is not being provided with the medication regimen that he prefers.   This, however, does not suffice to demonstrate that he will be irreparably harmed by the medical treatment he is receiving.

Wolff v. NH Dept. of Corrections, 2007 WL 3232531, *5 (D.N.H. Oct. 30, 2007).

is not well served by interfering with and delving into the day to day administration of FMC Devens by ordering the injunctive relief requested by petitioner, to wit, a different physician and "pain medication that works" (Docket Entry # 46).  See generally Sanchez v. Sabol, 539 F.Supp.2d at 459 (most court "can do is to order BOP officials to review Sanchez's request for a transplant in an expedited manner").

<u>CONCLUSION</u>

For the above reasons, the motions for summary judgment (Docket Entry ## 11 & 41) are **ALLOWED** in part and **DENIED** in part.  The motions for leave to amend (Docket Entry ## 44 & 47) are **ALLOWED** in part and **DENIED** in part.  The motion for writ of injunctive relief (Docket Entry # 46) is **DENIED**.

This action will proceed as a <u>Bivens</u> proceeding.  The BOP and the United States are dismissed as parties.  Grondolsky is substituted in place of Sabol.  The deadline for fact discovery is October 29, 2010.  The deadline to file dispositive motions is November 29, 2010.  The deadline to file any motion for leave to amend, including a motion for leave to amend to include an additional party, has passed.

    /s/ Marianne B. Bowler    
**MARIANNE B. BOWLER**
United States Magistrate Judge