UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMMETT MADISON GRAHAM, JR.,
        Petitioner,                      CIVIL ACTION NO.
                                         08-40208-MBB
            v.

JEFF GRONDOLSKY,
HARLEY LAPPIN and
SANDRA HOWARD, M.D.,
        Respondents.


**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS <u>BIVENS</u> COMPLAINT, OR IN THE ALTERNATIVE, FOR**
**SUMMARY JUDGMENT (DOCKET ENTRY # 87);**
**MOTION FOR LEAVE TO AMEND FOR NEWLY DISCOVERED EVIDENCE UNDER**
**RULE 15 FED. R. CIV. P.**
<u>**(DOCKET ENTRY # 84)**</u>

**February 6, 2012**

**BOWLER, U.S.M.J.**

Pending before this court is a summary judgment motion filed
by respondents Jeff Grondolsky ("Grondolsky"), Harley Lappin
("Lappin") and Sandra Howard, M.D. ("Dr. Howard") (collectively:
"respondents"). (Docket Entry # 87). Grondolsky is the warden
of the Federal Medical Center in Ayer, Massachusetts ("FMC
Devens"). (Docket Entry # 44). Lappin is the Director of the
Federal Bureau of Prisons ("BOP"). (Docket Entry # 6). Dr.
Howard is the Medical Director at FMC Devens. (Docket Entry #
44). Also pending is a motion for leave to amend filed by
petitioner Emmett Madison Graham, Jr. ("petitioner"), a former
inmate at FMC Devens. (Docket Entry # 84).

<u>PROCEDURAL BACKGROUND</u>

Petitioner initiated this action in October 2008 by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Docket Entry # 1).  The only respondent named in that petition was Carolyn Sobol ("Sobol"), then warden of FMC Devens.  (Docket Entry # 1).  In December 2008, petitioner moved to amend the petition to add additional claims.  (Docket Entry # 6).  In March 2009, petitioner moved for leave to add the United States ("United States") and Lappin as respondents.  (Docket Entry # 15).  In a subsequent motion, petitioner sought to withdraw all prior claims except for a deliberate indifference claim regarding a 2003 heart attack and "being dropped."  (Docket Entry # 35). In September 2009, this court allowed the motion to withdraw clarifying that the amended petition would include "only the foregoing heart attack and 'being dropped' deliberate indifference claim against Sabol, the United States of America and Lappin" and setting a deadline of November 27, 2009, to file any additional motion for leave to amend.  (Docket Entry # 40).

Within that time frame, petitioner moved for leave to add the following respondents:  the Federal Bureau of Prisons ("BOP"); certain unnamed BOP employees and physicians; Dr. Howard; and Grondolsky, who had replaced Sabol as warden of FMC Devens.  (Docket Entry # 44).  Grondolsky became warden at FMC Devens on August 16, 2009.  (Docket Entry # 88, Ex. A, ¶ 2). Also in November 2009, petitioner moved for leave to add Darcel Still, M.D. ("Dr. Still"), Chief Dental Officer at FMC Devens.

2

(Docket Entry # 48).  In December 2009, petitioner moved for leave to add R. Barnett, M.D. ("Dr. Barnett") as a respondent. (Docket Entry # 49).  Except for the motion to add Grondolsky as a respondent, these amendments failed.

Aside from Grondolsky, Lappin, and Dr. Howard, all other proposed respondents were either added and subsequently dismissed or petitioner's motions for leave to add them were denied.  This court issued these dismissals and denials in an August 12, 2010 opinion[1] which sua sponte converted the habeas petition to a Bivens[2] complaint.  (Docket Entry # 65).  This court also dismissed or denied petitioner's motions for leave to add the following claims of deliberate indifference to medical care: "being dropped" in 2003; 2003 heart attack; monitoring of pacemaker, failure to replace pacemaker and failure to replace batteries; bowel obstruction; treatment of back and shoulder; failure to send petitioner to a cardiologist; and alleged inadequate dental care.  This court dismissed all of these based on claim preclusion, the merits or both.  (Docket Entry # 65, pp.

---

[1]  In particular, this court dismissed claims against the United States due to sovereign immunity, denied a motion to add BOP and unnamed BOP employees and physicians due to sovereign immunity, denied a request to add Dr. Barnett because petitioner improperly made his request in a reply brief and denied a motion to add Dr. Still because her alleged mistreatment of petitioner did not as a matter of law rise to the level of deliberate indifference.

[2]  Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (establishing individual liability for federal employees) ("Bivens").

21 (dismissing dental care claim on the merits), 43 & n.44).

At this juncture, only the following claims remain:  (1) that Dr. Howard condoned Dr. Barnett denying petitioner pain medication for his back and shoulder (Docket Entry # 44, Ex. A & A-1; Docket Entry # 47, ¶ 4) (ground one); (2) that Dr. Howard condoned Dr. Barnett taking petitioner off morphine and not refilling his blood pressure medications (Docket Entry ## 44 & 48, p. 3) (ground two); (3) that petitioner was placed in administrative segregation on August 5, 2009, in retaliation for seeking administrative remedies and complaining about Dr. Barnett (Docket Entry # 44, p. 9) (ground three); and (4) that petitioner was transferred to more than 16 different institutions in retaliation for exercising his First Amendment rights (Docket Entry # 44, p. 10 & Ex. 5) (ground four).  The first two claims allege deliberate indifference to medical care in violation of the Eighth Amendment.  The latter two claims allege retaliatory action in violation of the First Amendment.  Claim three also alleges that certain conditions of confinement violated the Eighth Amendment.

In July 2010, petitioner was released to home confinement. He now lives in Whiteville, North Carolina.  (Docket Entry ## 63 & 66).  His sentence expired on December 24, 2010.  In light of the conversion to a _Bivens_ complaint, summonses with copies of the petition (Docket Entry # 1) and the August 12, 2010 opinion (Docket Entry # 65) (collectively: "the _Bivens_ complaint"), as

4

well as a copy of the United States Statement of Interest, issued to the three respondents on December 28, 2010.  On March 4, 2011, this court allowed petitioner to proceed in forma pauperis and waived the $350 filing fee.  (Docket Entry # 76).  On March 16, 2011, petitioner moved for a 60 day stay.  (Docket Entry # 78).  This court allowed the motion.  Lappin was served on April 4, 2011.  (Docket Entry # 79).  The 60 day stay ended on May 16, 2011, at which time this court held a status conference.  At that conference, this court gave petitioner ten days to serve Dr. Howard and Grondolsky, the remaining respondents.  This court also gave respondents 60 days to file motions responding to the <u>Bivens</u> complaint and gave petitioner 14 days thereafter to respond.  Dr. Howard and Grondolsky were served on May 24, 2011. (Docket Entry ## 82 & 83).

On June 7, 2011, petitioner moved to amend the <u>Bivens</u> complaint and submitted a memorandum detailing the following additional allegations of deliberate indifference to medical care:  failure to treat coronary artery calcifications; failure to treat chronic obstructive pulmonary disease ("COPD"); failure to treat mycobacterium avium intracellulare complex ("MAC") infection; and failure to treat hemoptysis (coughing up blood). (Docket Entry # 84, p. 1).  Respondents oppose the motion to amend.  (Docket Entry # 85).  On July 14, 2011, respondents filed the aforementioned motion to dismiss, or, in the alternative, for summary judgment along with attached exhibits.  (Docket Entry #

87).  On August 4, 2011, petitioner filed an opposition.  (Docket Entry # 89).

Out of an abundance of caution, this court issued a Procedural Order on December 8, 2011.  The order advised the parties that this court will treat the motion as one for summary judgment.  It also allowed the parties "to file additional exhibits" to support or oppose the motion.  The order did not allow the parties to file additional claims or additional arguments.

Petitioner nevertheless filed a December 29, 2011 affidavit (Docket Entry # 94) that, in part, includes additional claims and facts not relevant to the remaining claims at issue in the summary judgment motion.  Petitioner submitted additional exhibits on January 11, 2012.  (Docket Entry # 95).  This court therefore considers the affidavit and sets of exhibits only insofar as they include facts relevant to the claims that remain in this action.

I.  <u>MOTION TO DISMISS, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT (DOCKET ENTRY # 87)</u>

STANDARD OF REVIEW

Having provided the parties reasonable notice (Docket Entry # 91), this court will treat the motion to dismiss or, in the alternative, for summary judgment as a summary judgment motion.  Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine

whether trial is actually required.'" Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007).  It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Id.

Facts are viewed in favor of the non-movant, i.e., petitioner. Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009).  "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted." Davila, 498 F.3d at 12 (internal quotation marks, citation and ellipses omitted); accord Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary showing, nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue" with respect to each element on which he

"would bear the burden of proof at trial") (internal quotation marks and citations omitted).

## FACTUAL BACKGROUND

With respect to grounds one through four, the record shows the following applying the foregoing summary judgment standard. As to petitioner's denial of pain medication claim, on November 14, 2007, Graham sent an Inmate Request form to Dr. Howard stating:

> I am writing to ask your help with some pain medication. I have asked Dr. Barnett for help but [have] been denied. I need to see a neurologist about my back, shoulder and foot to fix the problem if the FBOP or [D]evens is not going to give me the proper medication.  Because I was dropped by Federal Staff.

(Docket Entry # 48, Ex. A, pp. 1 & 3).  A separate Inmate Request, filed by petitioner on May 20, 2008, requested that Dr. Barnett prescribe him Percocet for his pain because "Tylenol was not working."  (Docket Entry # 44, Ex. 3, p. 5).  On May 22, 2008, Nurse Stionis ("Stionis") replied in writing to petitioner that, "You are scheduled on 5-27-08 @ 12:30 with Dr. Barnett and can discuss this with him at that time."  (Docket Entry # 44, Ex. 3, p. 5).  On May 27, 2008, petitioner wrote on the May 20, 2008 Inmate Request form that Dr. Barnett "refused to give me proper meds."  (Docket Entry # 44, Ex. 3, p. 5).

On October 21, 2009, petitioner sent an Inmate Request form to Dr. Howard stating:

> I am writing to ask your help with my pain medication.  Dr. Barnett took me off my morphine, when I wrote him up.  If

you could please give me some kind of medication beside
Alvile [sic], I am in a lot of pain all the time.  The
Atvile [sic] does not help.

(Docket Entry # 44, Ex. A).

On October 30, 2009, petitioner sent another Inmate Request

form to Dr. Howard stating in part that:

. . . I saw you last week and talked to you about Dr.
Barnett taking my pain medication which you said you would
look into it, however I still don't have any pain
medication, as you know I was on it [almost] a year, and it
was "stopped at once" . . . Please give me your earliest
appointment available.  Please fix my back or give me my
pain meds.

(Docket Entry # 48, Ex. A).  In response, Dr. Howard wrote on the

Inmate Request form that, "I agree with stopping the pain meds .

. . Best to learn to live without them."  (Docket Entry # 48, Ex.

A).  Also on October 30, 2009, petitioner filed another Inmate

Request form stating that:

I have filled out several [request forms] asking to see a
heart doctor and trying to get my pain medication back that
you took me off after I had been on it for some time . . .
you never saw me before taking it, which caused me to
[almost] die . . . I am formally request[ing] your
assistance within the next 30 days to avoid litigation, on
you and FMC Devens' staff.  Please send me to a heart Dr.
outside and give me back my medication, or fix my back and
shoulder!

(Docket Entry # 48, Ex. A-2).

On November 8, 2009, petitioner filed an Inmate Sick Call

Sign Up Sheet upon which he stated, "I am in severe pain in the

back - shoulder and hip.  Please give me my pain medication."

(Docket Entry # 48, Ex. A-1).  On November 11, 2009, petitioner

filed a new Inmate Sick Call Sign Up Sheet upon which he stated,

"My back and shoulder pain is worse than ever.  Can't handle walk
of severe pain [sic]."  (Docket Entry # 48, Ex. A-1).

Next, in regards to petitioner's claim of denial of blood
pressure medication, the summary judgment facts are as follows.
On July 26, 2009, petitioner visited the FMC Devens Health
Services Unit ("the Clinic") because of chest pain, cold sweats
and chills.  (Docket Entry # 44).  On July 28, 2009, petitioner
received an ECG that indicated a "normal ECG."  (Docket Entry #
48, Ex. A-2).  Subsequently, he visited an outside hospital for a
chemical stress test and a check for blocked arteries.  (Docket
Entry # 44, p. 4).  During this time, petitioner had difficulty
obtaining prescription refills.  (Docket Entry # 44, Ex. 2).

On August 2, 2009, petitioner had high blood pressure and
received medication for it.  (Docket Entry # 44, pp. 5-6).  On
August 6, 2009, Lawrence Rosenthal, M.D. ("Dr. Rosenthal") of
UMass-Memorial Health Care University Campus drafted a Pacemaker
Follow-Up Report stating, "No malfunction seen."  (Docket Entry #
48, Ex. A-3).  On August 19, 2009, petitioner filed a Request for
Administrative Remedy attesting that:

> Once again my medications ran out on or about Aug. 1,
> 2009[.]  I was told at pill line Dr. Barnett failed to
> refill my prescription.  I then went to the clinic to get
> help with my high blood pressure, and to voice my concerns.
> However when I went in Nurse Houle stated "I want you out of
> here["] and ["]get out now, you don't have an appointment
> with me.["]  She would not listen to my concerns or assist
> me in any way.

(Docket Entry # 44, Ex. 2, p. 4).  Grondolsky replied to

petitioner's request as follows:

> A review of your medical records indicates your medications were not refilled.  However, there is a system in place to obtain access to the outpatient clinic.  Without first asking a staff member to contact the clinic for you to see if someone was available, you took it upon yourself to access the clinic, and by doing so, you were out of bounds. A discussion with the nurse in question revealed your concerns were not emergent and could be addressed by the mid-level provider the following morning.

(Docket Entry # 44, Ex. 2).

On March 3, 2010, Harrell Watts ("Watts"), Administrator for National Inmate Appeals, supported Grondolsky's decision.  Watts explained that a review of petitioner's medical records "reveals that you have received refills on your medications when you requested" and "you have received prescription refills each time you have presented yourself to the Health Services Unit." (Docket Entry # 62, Ex. B & B-1).

Turning to the facts relative to ground three, on July 30, 2009, petitioner filed an Inmate Request form accusing Dr. Barnett of "sexual abuse/assault" and requesting "a full investigation into this matter and Dr. Barnett be sanctioned . . .." (Docket Entry # 44, Ex. 3, p. 1).  On August 5, 2009, T. Croteau, S.O. ("Croteau") signed an Administrative Detention Order form placing petitioner "in the Special Housing Unit pending SIS investigation for protective custody."  (Docket Entry # 44, Ex. 4).  The form states that, "[petitioner] has requested admission for protection," and bears the signatures of both Lieutenant C. Enzel ("Enzel") and Croteau.  (Docket Entry # 44,

11

Ex. 4).  On August 12, 2009, a response to petitioner's request
from then-acting Warden Richard H. Russell ("Russell") granted
petitioner's request "to the extent that your allegations will be
investigated."  (Docket Entry # 44, Ex. 3, p. 2).

On August 31, 2009, petitioner addressed the following to
"Warden":

> I talked to you today about getting out of SHU[;] you said
> it was for my protection[.]  I was placed in the SHU on or
> about August 8, 2009 for [filing] my administrative remedies
> on Dr. Barnett for trying to stick his finger up my [rectum]
> . . . please [transfer] me to another institution where my
> life will not be in "danger" from staff that can go anywhere
> on [the] compound.

(Docket Entry # 89, Ex. D).  On September 28, 2009, Watts wrote
to petitioner that, "We reviewed the responses provided in this
matter and found the Warden's rationale for your placement in AD
reasonable and pragmatic."  (Docket Entry # 89, Ex. 9).  On
October 9, 2009, petitioner filed a Central Office Administrative
Remedy Appeal in which he wrote that he was "Disatisfied [sic]
with the decision" and requested a "full investigation into this
matter" and that "Dr. [Barnett] . . . be sanction[ed]."  (Docket
Entry # 89, Ex. 8).

On May 20, 2010, Lieutenant J. Roberts ("Roberts") filed an
order placing petitioner in administrative detention.  (Docket
Entry # 89, p. 6).  The order lists the reason for detention as
follows:  "You are being placed in Administrative Detention
pending protective custody at your own request even though you
refused to sign an administrative detention order."  (Docket

12

Entry # 89, p. 6).  On June 1, 2010, petitioner wrote to
Grondolsky stating:

> I am being kept in segregation without a detention order for
> writing a staff member up for blackmail [and] intimidation
> on or about [May 6, 2010,] that has not been acknowledged by
> you or your remedy coordinator . . . Mr. Brown of SIA stated
> I would be in the SHU until I leave prison, and that the
> only thing I have coming is a cell change ever[y] 21 days .
> . . I request to be released from the SHU, and staff be
> sanctioned . . ..

(Docket Entry # 89, Ex. D).

In a sworn declaration filed August 14, 2011, Cheryl
Magnusson ("Magnusson"), a legal assistant at FMC Devens, averred
that petitioner "failed to raise either a claim that he was
placed in administrative segregation on August 5, 2009 in
retaliation for exercising his constitutional rights, or a claim
alleging that he was transferred to any one or more BOP
facilities in retaliation for exercising his constitutional
rights."  (Docket Entry # 88, Ex. A, p. 2).  The summary judgment
record is inconclusive as to whether petitioner remained in
segregated confinement for the remainder of his incarceration.
The record is also inconclusive as to the exact nature and
conditions of segregated confinement at FMC Devens.

The petitioner's assertions (Docket Entry # 44) are the only
available descriptions of the conditions of his segregated
confinement.  He contends that he was "denied outside recreation
[and] only [had access to] showers three times a week" and that
his cell "did not have handrails and a raised toilet seat to meet

13

his handicapped needs." (Docket Entry # 44, p. 16). He asserts that he was subjected to "lights in [his] eyes 18 to 20 hours per day, not outside exercised, [and] not having meaningful access to phone calls." (Docket Entry # 89, p. 4). He also contends that he was "locked down 23 or 24 hours a day." (Docket Entry # 90, p. 2).

Finally, as to ground four, alleging retaliation, petitioner alleges he "has been 'transferred' over sixteen (16) times over the years." (Docket Entry # 44, p. 10). He submits that these transfers have caused his "time in the FBOP to be 'twice' as hard as a normal inmate's time." (Docket Entry # 44, Ex. 5). The summary judgment facts evidence petitioner was subject to "transfer" on: August 19, 1999; May 30, 2002; March 2, 2006; March 15, 2006; June 28, 2006; September 21, 2006; and August 14, 2007.[3] (Docket Entry # 44, Ex. 5, pp. 1-6). The facts also indicate that on January 18 and May 23, 2007, petitioner was transferred to another facility for "hospitalization and treatment/adjustment purposes." (Docket Entry # 44, Ex. 16 & 17).[4]

## DISCUSSION

---

[3] Exhibit five is a list of petitioner's admission and release history. Dates included here as "transfers" are those which explicitly display "Transfer" or "Trans Seg" in the "Assignment" column.

[4] Exhibits 16 and 17 consist of two United States Department of Justice Federal Bureau of Prisons transfer orders.

Respondents move for summary judgment on the following grounds:  res judicata; petitioner's failure to exhaust administrative remedies; his failure to demand money damages; his failure to allege personal involvement by respondents; and/or the merits, as established by petitioner's admissions, including that he suffered no actionable injury.  (Docket Entry ## 87 & 88). Grounds one and two raise Eighth Amendment claims of deliberate indifference to petitioner's medical care.[5]  Grounds three and four raise First Amendment retaliation claims.  Ground three also raises an Eighth Amendment claim of cruel and unusual punishment.

Petitioner brings these actions under a <u>Bivens</u> theory of liability.  "The <u>Bivens</u> doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities."  <u>Chiang v. Skeirik</u>, 582 F.3d 238, 243 (1st Cir. 2009) (internal quotation marks omitted).

A.  <u>Deliberate Indifference Claims</u>

The Supreme Court in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), set forth a two part test for Eighth Amendment violations. "First, the deprivation alleged must be, objectively, sufficiently serious."  <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 8 (1st Cir. 2002) (citing <u>Brennan</u>, 511 U.S. at 834).  Second,

---

[5]  The three claims proposed in the motion to amend likewise raise Eighth Amendment deliberate indifference to medical care claims.

15

there must be a showing "that prison officials possessed a
sufficiently culpable state of mind, namely one of 'deliberate
indifference' to an inmate's health or safety." Burrell, 307
F.3d at 8 (citing Brennan, 511 U.S. at 837); see also Hudson v.
McMillian, 503 U.S. 1, 8 (1992).

Where an issue of deliberate indifference is presented,
liability will not lie "unless the official knows of and
disregards an excessive risk to inmate health and safety."
Brennan, 511 U.S. at 837.  "A finding of deliberate indifference
requires more than a showing of negligence."  Id.; see Burrell,
307 F.3d at 8 (deliberate indifference standard requires state of
mind "more blameworthy than negligence").  "[T]he official must
both be aware of facts from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also
draw that inference."  Brennan, 511 U.S. at 837.

Thus, substandard treatment, "even to the point of
malpractice, is not the issue" under the deliberate indifference
standard.  Feeney v. Correctional Medical Services, Inc., 464
F.3d 158, 162 (1st Cir. 2006).  Further, a disagreement about the
appropriate course of treatment "may present a colorable claim of
negligence, but it falls short of alleging a constitutional
violation."  Id.  "The right to be free from cruel and unusual
punishment does not include the right to the treatment of one's
choice."  Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).

16

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Turning to grounds one and two, petitioner alleges that Dr. Howard condoned Dr. Barnett's denial of medication to treat petitioner's back and shoulder pain. (Docket Entry ## 44, Ex. A & A-1; Docket Entry # 47). Petitioner further maintains that Dr. Howard condoned both Dr. Barnett's denial of petitioner's blood pressure medication as well as Dr. Barnett's refusal to continue petitioner's morphine treatment. (Docket Entry # 47).

   1.   Denial of Pain Medication

Petitioner asserts that respondents "provided substandard care over a long period of time that virtually amounted to no medical care at all as [petitioner's] deteriorated back, shoulder and heart condition clearly shows." (Docket Entry # 48, p. 2). He contends that as a result of respondents' denial of pain medications, he suffered "severe pain in the back - shoulder and hip" and that walking caused him "severe pain." (Docket Entry # 48, Ex. A-1). Respondents "[knew] this would cause 'death' or 'permanent harm,'" according to petitioner. (Docket Entry # 48, p. 3). Petitioner further alleges that the respondents were "grossly negligent, reckless and callously indifferent, that

17

created a genuine issue of material facts as to whether the
supervisory [respondents] were personally involved in violating
my rights." (Docket Entry # 48, p. 3).

Respondents' argument that the claim fails on the merits is
well founded. First and foremost, substandard treatment and a
disagreement regarding the course of treatment do not raise a
constitutional issue. See Feeney, 464 F.3d at 162; see also
Vinzant, 657 F.2d at 473; Lucas, 537 F.2d at 860 n.5.
Additionally, the medical records demonstrate that petitioner had
adequate access to medical treatment while incarcerated and
received prescription refills each time he presented himself to
the Clinic. (Docket Entry # 89, Ex. B; Docket Entry # 44, Ex.
5). Further, the assertions that respondents provided poor
medical treatment and that FMC Devens failed to adhere to
"acceptable community standards" taken together amount to a claim
of medical malpractice. Medical malpractice is a separate issue
where a claim of deliberate indifference is concerned. See
Feeney, 464 F.3d at 162.

Finally, petitioner fails to show facts that "the officials
act[ed] with a sufficiently culpable state of mind" and that the
alleged wrongdoing was objectively "harmful enough" to establish
a constitutional violation. See McMillian, 503 U.S. at 8; see
also Burrell, 307 F.3d at 8. Evidence of poor medical treatment
is still insufficient to support a claim of deliberate

indifference to medical care absent a showing that respondents acted willfully and deliberately in denying him treatment. Ground one is therefore subject to summary judgment.

2.   Denial of Blood Pressure Medication and Morphine

In ground two, petitioner alleges that respondents maliciously deprived him of blood pressure medication and morphine.  He further submits that respondents "provided substandard care over a long period of time that virtually amounted to no medical care at all as [petitioner's] deteriorated back, shoulder and heart condition clearly shows."  (Docket Entry # 48, p. 2).  Petitioner also asserts that respondents "conspired to deny [petitioner] medical care at community standards" and that "allowing Dr. Barnett to take [petitioner] off his 'morphine' pain medication 'all at once' . . . was unjustified knowing this could cause 'death' or 'permanent harm' and was cruel and unusual punishment."  (Docket Entry # 48, p. 3). Petitioner additionally alleges that in committing the above acts and omissions, respondents were "grossly negligent, reckless and callously indifferent, that created a genuine issue of material facts as to whether [respondents] were personally involved in violating my rights."  (Docket Entry # 48, p. 3).

Respondents argue that this claim must be dismissed both for failure to allege personal involvement of Lappin and Grondolsky and on the merits because petitioner fails to set out any actual

injury.  (Docket Entry # 44, Ex. A).  Respondents' argument that petitioner's claim is without merit is again well taken.

Petitioner initially intimates that he did not suffer any actual injury as a result of the delay in receiving blood pressure medication:  "If it were not for the quick level headed action of P.A. Spada, the unthinkable may well have been what we could be discussing today."  (Docket Entry # 44).  In the later memorandum in opposition to respondents' motion, petitioner alleges that as a result of his medications being denied, he suffered "irregular heartbeats, heart racing, cold sweats, chills, diarrhea, vomiting, [he] couldn't eat, [had difficulty] sleeping, [suffered] fainting spells, [and] thought [he] was going to die."  (Docket Entry # 89).  Petitioner further alleges that he "had to stay in pill line for over 45 minutes at times which made his pain worse, as the defendants knew."  (Docket Entry # 89).

The summary judgment record shows that petitioner was unable to refill his prescription on July 30, 2009; was without medication on July 31 and August 1; and on August 2 he obtained his medication from the Clinic.  (Docket Entry # 44, pp. 3-6).  He was therefore without his medication for two days at most.  Additionally, petitioner received prescription refills each time he presented himself to the Clinic.  (Docket Entry # 89, Ex. B).  Here, the lack of access to blood pressure medication for two

days does not provide adequate evidence of a deprivation that is "objectively, sufficiently serious." See Burrell, 307 F.3d at 8.

As for the discontinuation of petitioner's morphine regimen, respondents are correct in that the claim is essentially that petitioner preferred morphine to Advil. As noted above, a disagreement regarding the adequacy or course of treatment does not raise a constitutional issue. See Vinzant, 657 F.2d at 473; see also Lucas, 537 F.2d at 860 n.5; Wolff v. N.H. Dep't of Corrections, 2007 WL 3232531, at *5 (D.N.H. 2007) (rejecting the plaintiff inmate's deliberate indifference claim, viewing it as disagreement with prison medical staff over type of pain medication the plaintiff should receive).

Finally, petitioner's list of ailments allegedly caused by lack of access to medication, including cold sweats, irregular heartbeats and difficulty sleeping (Docket Entry # 89), does not rise to the level of "objectively, sufficiently serious." See Burrell, 307 F.3d at 8. Petitioner also fails to show the requisite evidence demonstrating respondents' "sufficiently culpable state of mind." Burrell, 307 F.3d at 8. Therefore, ground two does not survive summary judgment.

B. Retaliation Claims

While imprisonment does not automatically deprive an inmate of constitutional protections, the Constitution permits greater restriction of such rights in a prison than it would allow

21

elsewhere.  See Turner v. Safley, 482 U.S. 78, 84–85 & 93 (1987).

Under Turner, prison regulations that "[impinge] on inmates'

constitutional rights" are permissible if they are "reasonably

related to legitimate penological interests."  Turner v. Safley,

482 U.S. at 89.  Additionally, courts owe "substantial deference

to the professional judgment of prison administrators, who bear a

significant responsibility for defining a corrections system's

legitimate goals and determining the most appropriate means to

accomplish them."  Overton v. Bazzetta, 539 U.S. 126, 126 (2003).

That said, to prevail on a retaliation claim:

> an inmate must establish that (1) he engaged in
> constitutionally protected conduct, (2) prison officials
> took an adverse action against him (3) with the intent to
> retaliate against him for engaging in the constitutionally
> protected conduct, and (4) he would not have suffered the
> adverse action "but for" the prison officials' retaliatory
> motive.

Partelow v. Massachusetts, 442 F.Supp.2d 41, 51 (D.Mass. 2006).

A claim asserting that administrative segregation violated a

constitutional right must establish that no "legitimate

penological interests" were served by segregation.  Turner, 482

U.S. at 89 & 107.

Turning to grounds three and four, petitioner alleges

generally that respondents retaliated against him in violation of

the First Amendment for seeking administrative remedies and

filing complaints against FMC Devens staff.  The third claim

alleges specifically that respondents retaliated against him by

placing him in administrative segregation.  (Docket Entry ## 47 &
89).  This claim also asserts that aspects of segregation
violated the Eighth Amendment.  (Docket Entry ## 47 & 89).  The
fourth claim maintains that respondents retaliated against him by
transferring him to more than 16 different institutions during
his incarceration.  (Docket Entry ## 47 & 89).

    1.  Administrative Segregation

    Ground three sets out the claim that, in violation of the
First Amendment, respondents placed petitioner in administrative
segregation in retaliation for seeking administrative remedies
and filing complaints against FMC Devens staff.  Specifically,
petitioner asserts that he was:

> kept in administration [sic] detention ("hole") for a total
> of two (2) years or more without any violation [of]
> regulations of the FBOP . . . However, around several months
> or more was without outside recreation causing him extreme
> painful and emotional injury which is against the law, also
> constituting "physical and mental torture" under 18 U.S.C. §
> 2340(1)(2)(A)&(B); See also, as held in:  Hewitt v. Helms,
> 456 U.S. 460.

(Docket Entry # 44, pp. 9-10, Ex. 4).

    Petitioner also maintains that certain conditions of his
segregated confinement violated the Eighth Amendment.  He submits
inter alia that his cell "did not have handrails and a raised
toilet seat to meet his handicapped needs," he "only [had access
to] showers three times a week," and was subjected to "lights in
[his] eyes 18 to 20 hours per day . . . [and] not having
meaningful access to phone calls (family)."  (Docket Entry # 44,

p. 16; Docket Entry # 89, p. 4).  Respondents argue first that
the First Amendment retaliation claim is invalid because
petitioner failed to exhaust his administrative remedies prior to
filing the <u>Bivens</u> complaint.  Next, they argue that the
retaliation claim fails because petitioner fails to allege
personal involvement on the part of any respondent.

Respondents' argument that petitioner failed to allege
involvement on the part of any respondent is well founded.  The
summary judgment record shows that petitioner was placed in
segregated confinement "on or about August 8, 2009."  (Docket
Entry # 89, Ex. D).  As warden of FMC Devens, Grondolsky was the
only one of the three named respondents authorized to order
petitioner placed in segregated confinement.  Respondents
correctly note, however, that Grondolsky did not begin his
employment as warden at FMC Devens until August 16, 2009, eight
days after the order was made.  (Docket Entry # 88, p. 1 & Ex.
A).  It is therefore impossible that any of the named respondents
was responsible for placing petitioner in segregated confinement.
While Grondolsky was subsequently responsible for determining the
appropriateness of petitioner's continued confinement in
segregation, the summary judgment record is replete with evidence
that petitioner's continued placement in segregation was proper.
(Docket Entry # 44, Ex. 3, p. 2 & Ex. 4; Docket Entry # 89, p. 6,
Ex. D, Ex. 8 & Ex. 9).

Next, as to the Eighth Amendment claim, respondents argue that it fails on the merits because petitioner was not subjected to unnecessary infliction of pain while in administrative segregation.  Regarding petitioner's assertion that conditions of administrative segregation amounted to cruel and unusual punishment, "Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement.  They must ensure that inmates receive adequate food, clothing, shelter, and medical care."  Brennan, 511 U.S. at 825.  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Mere discomfort caused by conditions of confinement, without more, does not violate the Eighth Amendment.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Rather, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  Id. at 347.  Although the Supreme Court in Hutto v. Finney, 437 U.S. 678 (1978), rejected the idea that prolonged isolation was in itself cruel and unusual punishment, it recognized that length of isolation was a factor.  Id. at 686.

For example, the "Eighth Amendment requires prisoners confined to their cells 24 hours a day to have regular exercise."  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (finding Eighth Amendment violation where prisoners confined for years without opportunity to go outside except for court appearances,

attorney interviews and hospital appointments).  Likewise, a
prisoner's lack of access to handicapped accessible equipment
does not necessarily state an Eighth Amendment claim.  The court
in Partelow held that where an inmate has access to "less than
ideal" equipment, the record must evidence "a culpable state of
mind, or deliberate indifference" in order to state an Eighth
Amendment claim.  Partelow v. Massachusetts, 442 F.Supp.2d at 50;
see also Chambers v. Warden, New Hampsire State, 2002 WL 1790586,
*4 (D.N.H. Aug. 5, 2002) (prisoner's Eighth Amendment claim
unlikely to succeed despite ability to demonstrate serious
medical need for handicap accessible cell due to failure to
demonstrate defendants' deliberate indifference).

While the constitution does not compel prisons to provide
inmates with outdoor exercise, "the near-total deprivation of the
opportunity to exercise may violate the Eighth Amendment unless
the restriction relates to a legitimate penological purpose."
Platt v. Brockenborough, 476 F.Supp.2d 467, 472 (E.D. Pa. 2007);
see also Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)
(objective element of Eighth Amendment analysis met where inmate
limited to 45 minutes of outdoor recreation per week during six
week period); Wishon v. Gammon, 978 F.2d 446, 449(8th Cir. 1992)
(45 minutes a week of outdoor exercise did not violate prisoner's
Eighth Amendment rights where no injury suffered); Toussaint v.
Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (denial of outdoor

exercise to inmates assigned to administrative segregation for over one year raised "substantial constitutional question"); Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir. 1982) (one hour of exercise per day upheld as not violating the Eighth Amendment).

A valid Eighth Amendment claim may also exist where a prisoner is subjected to continuous and overbearing lights.  See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) (denying the defendants summary judgment on segregated inmate's Eighth Amendment claim complaining cell was "constantly illuminated" by "large florescent lights" 24 hours a day, causing "grave sleeping problems" and other mental and psychological problems). Nevertheless, even where a prisoner is "unable to maintain a consistent sleeping habit" because his cell is "constantly illuminated," no valid claim exists where such illumination is dim and/or serves a valid penological purpose, such as monitoring inmates.  See Wills v. Terhune, 404 F.Supp.2d 1226, 1230-31 (E.D.Cal. 2005).

Respondents argue that the Eighth Amendment claim fails on the merits because petitioner has not alleged that he was subjected to unnecessary infliction of pain while he was in administrative segregation.  (Docket Entry # 88, p. 15). Respondents' argument is again well taken.  Petitioner's contention is that limited access to outdoor recreation (Docket Entry # 44, p. 16), lack of access to a handicap accessible cell (Docket Entry # 44, p. 16), being subjected to artificial lights

for 18 to 20 hours per day (Docket Entry # 89, p. 4) and being confined for 23 to 24 hours daily (Docket Entry # 90, p. 2) comprise an Eighth Amendment violation.  These conditions as described, however, generally equate to typical and constitutional conditions of segregated confinement, see, e.g., Keenan v. Hall, 83 F.3d at 1091; Allen v. Sakai, 48 F.3d at 1087; Wishon v. Gammon, 978 F.2d at 449; Toussaint v. Yockey, 722 F.2d at 1493; Ruiz v. Estelle, 679 F.2d at 1152; Chao v. Ballista, 772 F. Supp. 2d 337, 357 (D.Mass. 2011); Coleman v. Granholm, 2008 WL 919642, *3 (E.D.Mich. Apr. 2, 2008); Platt v. Brockenborough, 476 F.Supp.2d at 472.

Further, lack of access to outdoor recreation does not necessarily state an Eighth Amendment claim, particularly where a valid penological interest is served.  See Platt, 476 F.Supp.2d at 472.  Here, such an interest was served:  the record shows that petitioner's segregation resulted from his request for a protective order against a member of FMC Devens staff (Docket Entry # 44, Ex. 4; Docket Entry # 89, Ex. 9).  The record also shows that petitioner was able to leave his cell for recreation approximately one hour per day.  (Docket Entry # 90, p. 2).

Additionally, while petitioner argues that his lack of access to handicapped accessible housing and equipment violates the Eighth Amendment (Docket Entry # 44, p. 16), he fails to set out facts from which to draw a reasonable inference that respondents denied his access with "a culpable state of mind, or

28

deliberate indifference." Partelow, 442 F.Supp.2d at 50.  Absent such facts, the claim cannot succeed.

Finally, while petitioner claims that being subjected to lights for 18 to 20 hours per day violated the Eighth Amendment, he fails to set out specific facts evidencing that the lights were sufficiently intense and constant to the point of being objectively harmful.  See Keenan v. Hall, 83 F.3d at 1091. Ground three is therefore subject to summary judgment in its entirety.

### 2.  Excessive Transfer

In ground four, petitioner alleges that respondents transferred him to more than 16 different institutions in retaliation for his exercising his First Amendment rights. (Docket Entry # 44 & Ex. 5, pp. 1-6).  Petitioner maintains that respondents' actions caused him "mental stress, hardship on [him] as well as [his] family."  (Docket Entry # 89, p. 4).  He further asserts that the number of civil suits and appeals he has filed while in federal custody are evidence of the validity of his claim.  (Docket Entry # 89, p. 4).  Respondents' argument that petitioner's claim fails on the merits is again well taken.

Again, Partelow sets out the standard requiring an inmate stating a claim of retaliation to show that prison employees took "adverse action" against his constitutionally protected conduct, did so intending to retaliate against him for said conduct, and that he would not have suffered the adverse action "but for" the

prison officials' retaliatory motive.  <u>Partelow</u>, 442 F.Supp.2d at 51.  A claim asserting that a transfer was carried out in retaliation requires that the "[p]laintiff . . . prove that he would not have been transferred 'but for' the alleged reason." <u>McDonald v. Hall</u>, 610 F.2d 16, 18-19 (1st Cir. 1979).

Further, federal law provides that a prisoner may be transferred from one facility to another at any time, <u>see</u> 18 U.S.C. § 3621, and there is no constitutionally protected liberty interest in remaining in the same prison in which one was originally incarcerated.  <u>See</u> <u>Olim v. Wakinekana</u>, 461 U.S. 238, 245-46 (1983); <u>see</u> <u>also</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 226-28 (1976); <u>Goff v. Burton</u>, 91 F.3d 1188, 1191 (8th Cir. 1996) ("generally prison officials may transfer a prisoner for whatever reason or no reason at all").

Respondents argue that ground four fails for several reasons.  First, they argue that petitioner has again failed to exhaust his administrative remedies.  Next, they argue that the claim fails on the merits because, as noted above, 18 U.S.C. § 3621 provides that a prisoner may be transferred at will.  Third, they argue that petitioner has not identified any of the respondents as responsible for his being transferred.  Fourth, respondents contend that petitioner has alleged no injuries. Finally, respondents maintain that the claim fails under principles of res judicata.

Respondents' argument that the claim fails on the merits is

well founded.  Although an inmate may not be transferred in
retaliation for exercising a constitutional right, see Partelow,
442 F.Supp.2d at 51, petitioner, who bears the underlying burden
of proof, fails to state sufficient facts supporting a
retaliatory motive on the part of respondents.  Petitioner merely
provides as evidence documents detailing the frequency of his
transfers.  (Docket Entry # 44, p. 10, Ex. 5, Ex. 16 & Ex. 17).
Because petitioner fails to provide sufficient facts from which
to draw a reasonable inference of a retaliatory motive, ground
four is subject to summary judgment.  See Torres-Martinez v.
Puerto Rico Department of Corrections, 485 F.3d 19, 22 (1st Cir.
2007) ("'[a]s to issues on which the summary judgment target
bears the ultimate burden of proof, [he] cannot rely on an
absence of competent evidence, but must affirmatively point to
specific facts that demonstrate the existence of an authentic
dispute'"); Triangle Trading Company, Inc. v. Robroy Industries,
Inc., 200 F.3d 1, 2 (1st Cir. 1999) (where nonmoving party bears
the underlying burden at trial, he must "produce 'specific facts,
in suitable evidentiary form, to establish the presence of a
trialworthy issue'").

In the alternative, petitioner fails to set forth facts
showing "that he would not have been transferred 'but for' the
alleged reason."  See McDonald, 610 F.2d at 18-19.  To the
contrary, the summary judgment record shows that on multiple
occasions petitioner was transferred for legitimate

"hospitalization and treatment/adjustment purposes."  (Docket

Entry # 44, Ex. 16 & 17).  Petitioner's inability to establish

that his filing complaints against FMC Devens staff caused him to

be transferred likewise warrants summary judgment on this claim.

See Torres-Martinez, 485 F.3d at 22; Triangle Trading Company,

Inc., 200 F.3d at 2.

II.  MOTION TO AMEND (DOCKET ENTRY # 84)

In the memorandum in support of the motion to amend for

newly discovered evidence, petitioner sets forth the following

allegations:

> (1) Petitioner now finds that it was not his pacemaker
> replaced and/or properly monitored but not seen [sic] a
> cardiologist for (artery blockages) coronary artery
> calcifications 85%/75% which was not treated for years at
> Devens.  Petitioner has undergone placement of a CYPHER
> drug eluding stints [sic] on 9/28/2010 at New Hanover
> Regional Medical Center in Wimlington, NC.
>
> (2) Petitioner was not treated properly for a pulmonary
> condition COPD, MAC Infection, as well as hemoptysis,
> petitioner has the possibility of a lung volume reduction
> surgery due to obstruction with an FEV of 55%, FVC of 77%
> predicted and ratio of 57% air trapping with a residual
> volume of 164% predicted.  Petitioner diffusion is low at
> 64% predicted.  Now has been put on oxygen to aid with
> breathing due to lack of treatment by the respondent for
> years.
>
> (3) Petitioner is waiting for back surgery, but is unable
> to go for surgery at this time due to the above conditions.
>
> Petitioner states that the above treatments should have
> been done by the respondent, at [FMC Devens].  However,
> petitioner was told by the respondents that the FBOP would

32

not pay for these treatments which has cost over $50,000.00 dollars since his release from [FMC Devens].

(Docket Entry # 84).  Petitioner submits a number of exhibits in support of these allegations.  (Docket Entry # 94).  Respondents oppose the amendments on the basis of undue delay and futility. (Docket Entry # 85).

The proposed three additional <u>Bivens</u> claims can be considered as presenting additional deliberate indifference claims subject to Rule 15(a), Fed. R. Civ. P. ("Rule 15(a)"); or additional facts to support the existing deliberate indifference to medical care claims in ground one and/or two subject to Rule 15(d), Fed. R. Civ. P. ("Rule 15(d)"); or the more exacting standard applicable after the filing of summary judgment motion[s].  The proposed amendment fails under all of these standards.

Rule 15(a) instructs "that leave to amend a complaint 'shall be freely given when justice so requires.'"  <u>Hatch v. Department for Children, Youth and Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001) (quoting Rule 15(a)).  In practice, this means that a denial of a motion to amend "will be upheld so long as the record evinces an arguably adequate basis for the court's decision (e.g., futility, bad faith, undue delay, or a dilatory motive on the movant's part)."  <u>Id.</u>; <u>accord</u> <u>Maine State Building and Const. Trades Council, AFL CIO v. U.S. Dept. of Labor</u>, 359 F.3d 14, 18-19 (1st Cir. 2004) (same; quoting <u>Hatch</u>, 274 F.3d at

19).  Futility is gauged under a Rule 12(b)(6) standard.  <u>See</u>
<u>Hatch</u>, 274 F.3d at 19.

Rule 15(d) allows leave to supplement a complaint with
facts "setting out" a "transaction, occurrence, or event that
happened after the date" of the complaint.  Rule 15(d), Fed. R.
Civ. P.  "Absent undue delay, bad faith, dilatory tactics, undue
prejudice to the party to be served with the proposed pleading,
or futility, the motion [to supplement] should be freely
granted."  <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 66 (2nd Cir.
1995) (reversing district court's denial of the plaintiff's Rule
15(d) motion for leave to file supplemental complaint alleging
additional retaliation claim).

Where a party seeks to include additional legal claims
after the filing and a ruling on a summary judgment motion, the
party must provide "substantial and convincing evidence" to
justify the proposed new claims.  <u>Massachusetts Eye and Ear</u>
<u>Infirmary v. QLT Phototherapeutics, Inc.</u>, 412 F.3d 215, 231 (1st
Cir. 2005) (requiring amending party "to show 'substantial and
convincing evidence' to justify belated attempt" to amend after
opposing party files summary judgment motions); <u>see</u> <u>also</u>
<u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir.
1996); <u>Nkihtaqmikon v. Bureau of Indian Affairs</u>, 453 F.Supp.2d
193, 201 (D.Me.2006) (discussing interplay between summary
judgment motion and motion to supplement under Rule 15(d)); <u>City</u>
<u>of Revere v. Boston/Logan Airport Associates, LLC.</u>, 443

34

F.Supp.2d 121, 125 (D.Mass. 2006) (denying motion for leave to amend where motion was untimely and lacked merit).  Here, as previously noted, Sabol filed a summary judgment motion. (Docket Entry # 11).

As correctly explained by respondents (Docket Entry # 85), the proposed deliberate indifference claims are futile. Alternatively, petitioner unduly delayed bringing these "new" claims or supplemental facts and events.  As aptly stated by respondents, petitioner fails to explain why he did not "discover the bases for his four proposed new claims while he was at FMC Devens, or during the first nine months following his release."  (Docket Entry # 85).  The prejudice to respondents to defend against them, in some instances again because they repeat previously dismissed claims, or anew in this 2008 case is significant.  Leave to amend is denied.

<u>CONCLUSION</u>

Respondents' summary judgment motion (Docket Entry # 87) is **ALLOWED**.  The motion for leave to amend (Docket Entry # 84) is **DENIED**.


     /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate
Judge